Hemphill, Oh. J.
It will not be necessary to consider separately tlie proposition that the principal who vests his special agent with tlie muni-ments of a legal or absolute title is bound by his acts, though they may transcend tlie scope of his authority. As a general legal truth, this is certainly beyond question.
The proposition is stated in terms of similar import in section 227 of Story on Agency; and the case cited by tlie■ learned jurist as an example of tlie principle is that of a broker employed to purchase, and having ordinarily no authority to sell, still if the principal invest him with the apparent legal ownership, he will be bound by a sale made by tlie broker.
Tlie subject for direct inquiry is whether tlie holder of a note indorsed in blank or payable to bearer, and transferred by a special agent before maturity for a valuable consideration and without notice of tlie right of the real owner, has a valid title?
That lie has such title is settled by almost numberless authorities. One of tlie first cases, and tlie leading one, in which the validity of tiie holder’s title was established is Miller v. Race, (1 Burr. R., 542; 1 Smith’s Leading Cases, p. 441.) Tlie doctrine was there laid down that property in a bank note passes like that in easli by delivery; and a party taking it bona fide and for value is entitled to reclaim it as against a former owner from whom it lias been stolen. This rule has in subsequent cases been extended to all negotiable instruments transferable by delivery. (3 Burr. R., 1516; 3 B. & C. R., 45; 5 Tex. R., 683.) Promissory notes and bills payable, to bearer, or payable to order and indorsed in blank, are transferable as cash by delivery, and have that character of negotiability which brings them within the scope and. operation of tlie rule.
*262 The rule itself is an exception to the general principle of English law that a personal chattel cannot be acquired from one who lias no title to it himself except (in England) by sale in market overt; and negotiable paper is exempted from (lie general rule, to subserve the purposes and promote the objects of commercial exchanges. That the advantages of the. unrestricted circulation of mercantile paper may be obtained, it is held that the property and possession of such paper go together.' In Collins v. Marlin (1 Bos. & Pul. R., 648) it is said that, for the purpose of rendering bills of exchange negotiable, tlie right of property in them passes with the bills themselves. The properly and possession are inseparable.
In this respect they differ essentially from goods of which the property and possession maybe in different persons. Tlie property passing with tlie possession. it is admitted that a banker who receives indorsed bills from his customer, to be got when due and carried to his account, may discount or sell them, why may he not pledge them? Either is a breach of confidence reposed in him; and lie may sell, because tlie property lias been intrusted to him; and may pledge for the same reason, for lie. who has the property has the disposing power. (4 Campb. N. P., 349; 2 Id., 123; 13 East. R., 130, 135; 2 Kent Comm., 626, 627; 4 Mass. R., 45.)
The possession giving the holder of negotiable paper disposing power, he may, although he lias no property in tlie'paper, give title to a third person receiving it bona fide and for a valuable consideration. Good faith and valuable consideration are essential elements of such title, for where the paper comes mala fide into a person’s hands it is in tlie nature of specific property; and if traced, tlie real owner lias the right to recover. (Clarke v. Shee, Cowp. R., 197.)
Tlie remaining inquiry is whether the notes came into the hands of Wheeler bona fide and upon good consideration.
Tlie appellant contends that the defendant is not a possessor in good faith, for tlie reason that Gould, tlie transferrer, was an attorney at law, and that the facts of his holding himself out in that capacity was sufficient to throw doubt upon his right to dispose of tlie note and lead the mind to inquiry. In other words, that his profession is uotiee to all the world that he is a special agent, whose ordinary powers are limited to the collection of money upon notes and bills intrusted to him for collection; that the law presumes notice of tlie relation existing between him and his client; and eveiy person dealing with him deals at his' peril.
If this doctrine be admitted, attorneys would stand as a proscribed class, in whose hands the possession of negotiable notes or bank bills would not, as with tlie rest of mankind, give properly and disposing power — negotiability. IE the fact of his being an attorney should throw discredit on negotiable paper in his hands, it should operate alike on hank bills or even gold and silver. There is just as strong a presumption timt tlie mo.noy in his hands belongs to a client as there is that all the negotiable paper in his hands iias been placed there for collection. Negotiable paper, bank bills, or any species of currency which can be traced, would be comparatively worthless to an attorney, for no one would deal with him on tlie same terms that he would with others if his dealings were at tlie peril of defeat of recovery against the maker or of reclamation from the real owner.
The injustice of such a rule and the embarrassment which it would.throw around negotiable paper need not be further discussed. No decision or authority lias been referred to in tlie argument which authorizes this exception to tlie general rule establishing the title of bona fide holders of negotiable paper. The cases all show that it is immaterial for what purpose tlie notes may have been placed in the hands of tlie vendor or pledgor.
Tlie banker who receives notes from ids customers, to be got when due and placed lo his account, is a special agent, and transcends his authority when lie sells, plelges, or otherwise, disposes of them; yet tlie owner cannot reclaim them from third parties who have received them bona fide and for a valuable *263 consideration. (1 Bos. & Pul. R., 648. 539; Story on Agency, sec. 227, note 3.) And the rule is equally protective of the holder in good faith of negotiable paper purchased from an attorney at law. In either case the tille is derived from the instrument itself, and not from the title which the party has who transfers it. The possession of the note gives the holder disposing power over the same. The note passes as a species of currency, without inquiry as ro the title of the holder. It is immaterial whether the vendor be an attorney at law or not, or whether he has obtained it by theft, by fraud, by finding, or upon trust. The title of the transferree depends upon the possession of the vendor, but on none of the circumstances under whicii it was obtained. This possession gives him authority to sell; and if the buyer has acted in good faith and paid a valuable consideration, his title cannot be impugned. On examining the American Chancery Digest, under the head of Attorney at Law, (p. 20(5, par. 54,) I find it laid down that an attorney cannot legally transfer in payment of his private debts a note placed in his hands for collection, so as to bind his client thereby, either in law or equity; and o Stewart & Porter, 354, and 1 Porter E., 212, are cited as cases from which the principle is extracted. The hooks themselves are not witliiu the reach of the court, and I cannot consider the rule as it appears in the digest’entitled to any weight in the decision of this question. The facts of the cases are unknown. It might appear from these that the holder had notice that the notes were lodged with the attorney for collection, or the circumstances- may have been such as to throw a shade upon the transaction and to put the holder on inquiry, and of course, if such were the facts, the general rule would not apply.
The mere fact, then, that Gould was an attorney at law constituted no notice to the defendant that the note was held by him for collection. Of itself it is not a circumstance sufficient to excite suspicion or impair the title of the defendant.
Under that ground, In the motion for a new trial, which-assumes that the verdict is contrary to the law and the evidence, the inquiry arises whether, on the facts as proven, the defendant holds in good faith and for a valuable consideration.
What circumstauccs shall constitute mala fieles on the part of the holder, or shall he to him notice of defect or infirmity of title, has been the subject of much discussion and of considerable fluctuation of decision. As the reports are not accessible, I shall not attempt to examine the eases. They have been ably reviewed by the editor of Smith’s Leading Cases, in his notes on the case of Miller and Race. Judge Story, in Ills treatises on Bills of Exchange, section 194, and on Promissory Rotes, section 197, thus states the rule as to notice, the doctrines that for some time prevailed, and their final overthrow : It is agreed on all sides that express notice is not indispensable. It will be sufficient if the circumstances are of such a strong and pointed character as necessarily to east a shade upon the transaction, and put the holder upon inquiry. Éor a considerable length of time the doctrine prevailed that if the holder took the note under suspicious circumstances, or without due caution and inquiry, although he gave value for it, yet he was not to he deemed a holder bona fide without noticed But this doctrine has been since overruled and abandoned upon the ground of its inconvenience, and its obstruction to the free circulation and negotiation of exchange and other transferable paper. The doctrine of the case of Gill v. Cubbit, (3 B. & C. R., 546,) and several succeeding cases, was that the holder who had taken a bill under circumstances which ought to have excited the suspicion of a prudent and careful man liad no tille. In subsequent cases, (5 B. & Adol.. 909, 1098,) this was held -not to be the true rule, hut that the circumstances must amount to gross negligence on the part of the holder to invalidate ins title. And in tiie latest cases it has been determined that gross negligence is unimportant, except as it is evidence of mala fides. (Goodman v. Harvey, 4 Adol. & El., 870, and 1 Adol. & EL, E. R., 498, 504.) In this last case Lord Denman said that the owner of a bill is entitled to recover upon it if he has come by it honestly; that that fact is implied prima *264 fade by possession, and that to meet the inference so raised, fraud, felony, or some such matter must be proved. (Story on Agency, sec. 228, p. 273, n. 1.)
Notk 87- — Where anote payable to bearer, just due, is placed in the hands of ail agent for 9 particular purpose, and the agent transfers the note to a purchaser for value, in vio.a:ion oí nis trust, the principal may recover possession of it in an action against the purchaser. (Wheathered v. Smith, 9 T., 622.)
Note 88.—Drowning v. Sledge, 38 T., 192.
Kote 89.—McAnelly v. Chapman, 18 T., 198.
Is there any circumstance in this transaction indicative of fraud oi bad faith on the part of the defendant?
His testimony was taken by the plaintiff, and lie proves that he gave a valuable consideration for the noto; that the amount paid was the market price of notes at the time of the transfer; and that he did not know or believe at the rime of his purchase of the said note that it had been placed in Gould’s hands for collection as an attorney at law, but, on the contrary, lie believed it to bo the, bona fide property of said Gould; and lie farther testifies that the note was transferred in the fair and bona fide course of trade. , There was no evidence to rebut this testimony or to impeach the fairness and honesty of the defendant in the transaction. For aught that appears Gould may have, up to that period, been of unimpeachable character in ills transactions with liis clients. There may have been nothing unusual in his owning notes of tlmt amount in his own right and -his transfer of them to others. In fact there is no circumstance to arouse the suspicion of the defendant and lead him to inquiry.
The defendant testifies that the note was transferred in the fair and bona fide course of trade.
This is rather a question of law than of fact. The rule that to support the holder’s title the transfer must he bona fide and for a valuable consideration was usually expressed in the earliest cases with the qualification that the notes must have been received in the usual course of trade. What is meant by .the usual course of trade has been much discussed, and attempts have been made to limit the description to cases in which the holder has made'an actual advance in money, or its equivalent, for the paper. In New York it has been held that a note taken in payment of a precedent debt was not taken in the usual course of trade, and the holder would not have a valid title as against the real owner, nor could he resist an equitable defense good between the maker and the payee. But the great weight of authority is tiiat a transfer for a precedent debt is in the usual course of trade, and the holder must be treated as a bona fide holder for value. Judge Story, in the case of Swift v. Tyson, (10 Pet. R., 1.) reviews the Yew York cases and the whole doctrine. In his luminous opinion lie states that, assuming it to be true (which, however, may well admit of some doubt, from the generality of the language) that the holder of a negotiable note is unaffected'by the equities of the antecedent parties, of which lie has no notice only where he receives it in the usual course of trade and business for a valuable consideration before it becomes due, we arc prepared to say that receiving it in payment of or as security for a pre-exisling debt is according to the known usual course of trade and business. (3 Kelly R., 47.) A part ojf the consideration in this case was a pre-existing debt, and I have glanced at the subject to show that from the current of authorities such consideration is valuable, and tiiat a note is taken in the bona fide course of trade when transferred on such consideration.
Judgment affirmed.