John Twohig v. David Brown et al.

No. 7318.

1. **Sale of Defective Title — Partial Failure.**—Where the contract of sale of land is executory, the vendee may resist the payment of the purchase money on proof of the fact that there was a failure of title, unless the vendor establishes the fact that the vendee knew of the defect and took that risk. In case of an executed contract, where the failure of title is shown (that is, proof of a valid outstanding title), it devolves on the vendee to prove that he had no knowledge of that defect when he bought.

2. **Bona Fide Holder of Vendor's Lien Note.**—A holder of a vendor's lien note taken for value before maturity can subject the land to the debt, even where there is failure in part of title, unless he had notice of such defect at time of obtaining such note.

3. **Tender — Vendor's Lien.**—The maker of a vendor's lien note, before suit, tendered the amount he claimed to be due, and pleading the tender, deposited the money in court, where it remained. *Held*, that upon plaintiff recovering only the sum tendered it was no error for the court to fail or refuse to enter a decree of foreclosure. The debt was paid, and no lien existed.

4. **Knowledge of Facts as Notice.**—The purchaser of a vendor's lien note, before his purchase, was informed of the defect in the title to the land, but was informed that the vendee knew of it when he executed the note. *Held*, that having taken the note upon such information, it devolved upon him to establish it as a fact.

Appeal from Atascosa. Tried below before Hon. D. P. Marr.

*Devine & Smith* and *J. D. Morrison*, for appellant.—1. A purchaser of a vendor's lien note before maturity, and without notice of an outstanding title, is an innocent purchaser of said note, and entitled to a foreclosure of the vendor's lien to enforce the payment of said note. Gee v. Saunders, 66 Texas, 333; White v. Downs, 40 Texas, 225; Flanagan v. Cushman, 48 Texas, 241.

2. A purchaser who receives a deed with general warranty of title, having at the time of his purchase knowledge of a defect of title, can not resist the payment of the purchase money on the ground that a defect exists in such title, nor can he resist the payment of the note for the purchase money unless he has been evicted. Brock v. Southwick, 10 Texas, 65; Cooper v. Singleton, 19 Texas, 262; Flanagan v. Ward, 12 Texas, 209; May v. Ivie, 68 Texas, 381; Fisher v. Dow, 72 Texas, 433.

*Jno. A. & N. O. Green*, *W. J. Bowen*, and *R. B. Green*, for appellees.

1. Where vendee is deceived as to the title acquired, by fraud of the vendor, or is ignorant of the defect of title, it is not necessary that vendee be evicted before he can resist the payment of notes given for purchase money, if there is in fact a superior outstanding title.

2. The distinction recognized in our courts between an executory and

an executed contract, in a suit to recover the purchase money, is, that in the first case the vendor has the burden of proof and must show beyond doubt that the vendee knew of the defect in the title at the time of purchase, and took such title only as the vendor could give, taking on himself the risk of the defect. In the latter case the proof is shifted to the vendee, who must show that there was in fact a superior outstanding title (which is admitted in this case) and that he bought without knowledge of such defect of title. Then if this is held to be an executed contract, under the facts in this case, it is only necessary for the defendant to show that he had no notice of the failure of title at the time of purchase, the fact of failure of title not being in controversy. Cooper v. Singleton, 19 Texas, 260; Brock v. Southwick, 10 Texas, 65; Johnson v. Long, 27 Texas, 21; May v. Taylor, 27 Texas, 125; Tarpley v. Poage's Admr., 2 Texas, 149; Norris v. Ennis, 60 Texas, 83; Haralson v. Langford, 66 Texas, 111.

3. As to whether or not defendants knew of the defect in the title at the time of their purchase, was submitted to the jury by the court in its charge, and their conclusion thereon is final where not clearly contrary to the evidence. Oil Co. v. Farmer, 56 Texas, 301; Ragland v. Wisrock, 61 Texas, 391; Railway v. Dawson, 62 Texas, 260; Reeves v. Roberts, 62 Texas, 550; Railway v. Larkin, 64 Texas, 454; Lewy v. Fischl, 65 Texas, 311; Owens v. Railway, 67 Texas, 679.

HOBBY, PRESIDING JUDGE, *Section A.*—This suit was brought October 14, 1885, by John Twohig against David Brown and Dan and Anton Oppenheimer, on a promissory note executed by said Brown to Margaret and P. J. Maloney and Annie Woods, of New Orleans, Louisiana, in the sum of $500, and also on another note, executed by him to the same parties, for $476. They were executed on June 20, 1882. These notes recite, that they were given for the purchase money of a tract of land in Atascosa County, Texas, being abstract number 149, survey 832, in the name of Thomas Cannon, containing 1476 acres. The Maloneys and Annie Woods endorsed said notes to appellant, who brought this suit to recover the amount of said notes, principal and interest, and asking for a foreclosure of the vendors' lien on the land. Dan and Anton Oppenheimer were in possession of the land at the time suit was brought. William Cassin intervened and claimed an undivided one-half of the land.

The defendants pleaded a general denial, and alleged a tender of $238 in full payment of said notes; and further, pleaded a part failure of consideration, alleging that by the fraudulent, etc., statements of the agent of vendors, defendants were induced to give said notes, believing that they were getting a good title to the entire tract of land (1476 acres) for which the notes were executed, and that the title to one-half of said land had failed; that plaintiff had notice of such failure of title when he purchased the notes, etc.

The cause was tried by a jury, and a verdict was rendered for the plaintiff (appellant) for the sum of $238, on which judgment was entered. No lien was found by the verdict, and none was foreclosed, the $238 being in court. The plaintiff has appealed from this judgment.

Plaintiff introduced in evidence the two notes sued on, reciting the lien on the land. These notes were endorsed by the payees to plaintiff "without recourse."

The deed was also introduced from Margaret Delap Maloney, P. J. Maloney, and Annie Woods to Brown, reciting the payment of $500 and the execution of the two notes. It conveyed the entire tract of 1476 acres, known as survey 832, abstract number 149, in the name of Thomas Cannon, patented September 29, 1847.

The patent in evidence, introduced by the defendant, was to Delap & McHugh, assignees of Thomas Cannon, etc. The transfer of the certificate from the original grantee to Delap & McHugh was shown.

It was admitted that the vendors of Brown and the payees of the note were the sole heirs of Delap, one of the patentees, but were not the heirs of McHugh, the remaining patentee, and did not in the suit below claim to be such heirs.

The defendants Brown and Anton Oppenheimer testified, in substance, that the agent of the vendors informed Brown that the title to the entire tract of land (1476 acres) was good, and was in the Maloneys and Annie Woods. Upon this statement Brown claims to have made the purchase of the tract at $1 per acre, and executed the notes. He paid $500 in cash, which was advanced by Oppenheimer, and the notes were for the balance of the price agreed on for the whole tract. He testified that he had not been evicted from the land. The plaintiff's evidence in rebuttal was to the effect, that Brown knew that his vendors owned only one-half of the land when he purchased.

As the first, second, and third assignments have reference to the court's refusal to give certain special charges requested by the plaintiff, they may be considered properly together.

It is claimed that the court erred in refusing to give the following instructions:

First. " Notes payable to bearer or payable to order, and endorsed in blank, or to the party to whom they are delivered, are negotiable instruments."

Second. "If you believe that at the time John Twohig purchased the notes sued on he had no notice of an outstanding title, you will find for plaintiff."

Third. "A purchaser who receives a deed with general warranty of title, having at the time knowledge of a defect of title, can not resist the payment of the purchase money on the ground that said defect existed."

Fourth. "Unless the defendants have been evicted from the land for which the notes sued on were given, they can not resist the payment of the notes; that proof of a valid outstanding title is not a good defense."

If these instructions were substantially embodied in the general charge of the court, the appellant has no cause to complain that the court refused a repetition of them, which would have been the result had they been given as requested.

Looking to the court's charge, then, with a view to the ascertainment of this fact, we find that the jury were told, "with respect to the defendants' plea of partial failure of consideration," that "Brown acquired a good title only to one-half of the 1476 acres described in the deed to him, because the land was patented subsequent to the transfer of the certificate to both Delap and McHugh, thereby vesting the title to one-half of the land in each, and Brown's vendors are shown to be the heirs of Delap only."

In this connection, the charge continues in the following language:

"But while this is true, if, however, defendant Brown knew of this defect in the title at the time he purchased said tract of land, and notwithstanding purchased the whole tract of 1476 acres, and executed the notes sued on therefor, then he can not resist the payment thereof, but would be responsible for the full amount thereof, as he would also be bound to do, notwithstanding such failure of title and his ignorance thereof (if he was ignorant), if the plaintiff Twohig purchased said notes for a valuable consideration before their maturity and without actual notice on his part of such defect of title, because said notes are what the law terms negotiable instruments, and purport a consideration until the contrary is proven, and to the knowledge of the purchaser for value before maturity prior to his purchase."

The court further instructed the jury, that if the agents of the vendors represented to Brown that the said vendors owned the entire tract of land, and thereby "induced him (Brown) to believe, and that he did believe, that he was obtaining a good title to the entire tract of land by his said purchase and deed, then if plaintiff had notice of the defect of title when he bought the notes, then the jury should deduct from the amount of the notes the value of one-half of the land, as valued by the parties at the time of sale, and find for the plaintiff the balance due on the notes after such deduction," etc.  *  *  *

"If Brown knew, or was informed by the agents, of the defect in the title, or that he was obtaining a good title to only one-half, and he thereupon purchased the land at his own risk as to the defect, or was willing to take such title only as the vendors could give; and if the plaintiff bought the notes for value before maturity, the jury should find for the plaintiff the full amount of the notes sued on, notwithstanding the defect in the title to one-half of the land."

It seems to us that the court's charge was a full and fair presentation of the issues involved in this case, and that it correctly announced the legal principles applicable to the rights of the parties. We understand the rule to be, that where the contract of sale is executory, the vendee may resist the payment of the purchase money on proof of the fact that there was a failure of title, unless the vendor establishes the fact that the vendee knew of the defect and took that risk. In case of an executed contract, where the failure of title is shown (i. e., proof of a valid outstanding title), it devolves on the vendee to prove that he had no knowledge of that fact when he bought.

The remaining assignments complain of the verdict being contrary to the law and the evidence, because the jury should have found, that defendants had notice of an outstanding title to one-half of the land at the time of the purchase; and that they should have found that the plaintiff Twohig purchased the notes for value and without notice, etc.; and should have further found that a lien existed on one-half of the land to secure the payment of the sum of $238 found in favor of plaintiff.

Upon the issue as to whether the defendant Brown had notice of an outstanding title, or defect in his title, the testimony was irreconcilable. Both Oppenheimer and Brown testified, that they were informed by the agents of their vendors that the latter had a good title to the entire tract of 1476 acres, and could make a valid conveyance thereto. It was stated, on the other hand, in unequivocal terms by the agent, that Brown knew that he was only buying one-half of the land, and that he was fully advised of the condition of the title, and willingly took the risk of title to one-half of the tract. The jury, in this state of the proof, decided adversely to plaintiff, and we are not authorize to disturb their finding.

The jury having in effect found that Brown had no notice of any defect in the title, there then remained due only $238 on that part of the land (one-half) to which the title did not fail. There was no controversy whatever as to the fact that this sum was paid into court by defendants when the answer was filed, and that it is yet in the hands of the clerk. The proof was also, that it had been tendered to plaintiff prior to the institution of this suit, and that he refused it.

This being the amount due, as found by the jury, the only purpose which the further finding by the jury that a lien existed on the land could have served, would have been to secure the payment of that sum. But on the payment of the sum due the lien was extinguished. There could be no lien after the payment of the debt which the lien secured. There could have been no sale of the land to satisfy a lien which did not exist, because the debt was paid. Hence, if the amount found to be due was in fact the amount of the debt, then the debt was paid by the deposit of that sum in court.

It is claimed that the jury should have by the verdict found that Two-hig had no notice of the defect in the title, and that therefore he was entitled, as an innocent holder of negotiable paper, to payment in the full amount of the notes ($976) sued on.

This issue was clearly submitted in the charge, the jury having been told that the notes purported a consideration, and if purchased by Two-hig before maturity for value, and without notice of the defect of title, he was entitled to the full amount; but if he had such notice, the jury would deduct, etc., as before explained. Twohig acquired the notes prior to maturity, but it is apparent from his own testimony that before he purchased them he called on the agent of the vendors of defendants, and " put several questions to him as to the validity of the title and the quality of the land and the value of the two notes." The information he received was, that Brown's vendors had title to only one-half of the entire tract, and that Brown was clearly informed of that fact; that Brown knew well " on the day he bought the land that they had title to only 738 acres." In other words, he was told that Brown knew of the defect in the title which he set up as a defense. Twohig having bought the notes on this information, took the risk of establishing it as a fact.

We conclude that the judgment ought to be affirmed.

*Affirmed.*

Adopted May 24, 1892.