**KAUFMAN OIL MILL et al. v. NORTH TEXAS NAT. BANK IN DALLAS.** (No. 784.)

Court of Civil Appeals of Texas. Waco.
March 28, 1929.

Rehearing Denied April 18, 1929.

Bailey & Bailey, of Dallas, for appellants.
Thomas & Storey, of Dallas, for appellee.

STANFORD, J. This suit was upon three promissory notes, signed by appellant Kauf-man Oil Mill, payable to the order of "ourselves," and indorsed on the back thereof, "Kaufman Oil Mill, by W. T. Conley, Secretary and Treasurer," one of said notes being in the principal sum of $5,000, and two of said notes being in the principal sum of $10,000 each. Said notes were each dated May 1, 1926, and due September 1, 1926, and were transferred to appellee before maturity. Said notes were each secured by a limited written guaranty executed by the appellants herein, other than the Kaufman Oil Mill. The pleadings of the parties were sufficient to raise all the issues made by the evidence. The material parts of the written guaranty, also the other facts of the case, will be set out in our deposition of appellants' assignments.

The case was tried to a jury, but, when the evidence was all in, the court instructed a verdict for appellee against all the appellants for the balance claimed to be due on said notes, and, judgment having been so rendered, appellants duly appealed, and present the record here for review.

Under their first four propositions appellants contend, in effect, that the court erred in instructing a verdict for appellees and in refusing to instruct for appellants. The record disclosed that in the early part of 1926 the Kaufman Oil Mill, located at Kaufman, made an arrangement with S. W. Sibley, of Dallas, whereby the said Sibley was to act as its agent in raising certain moneys for the purpose of financing the operation of said oil mill. Under this agreement the Kaufman Oil Mill was to deposit with Mr. Sibley undated notes, in varying amounts, which were all properly signed by the Kaufman Oil Mill, payable to its own order, and indorsed by itself; and at the same time the individual appellants were to, and did, execute a limited guaranty, guaranteeing the payment of said notes executed by said oil mill. At times when the Kaufman Oil Mill needed the money in its operations, the president was to notify the said Sibley, and authorize him to date the notes which had been placed with him and to discount them at various banks, deposit the proceeds to the account of the Kaufman Oil Mill, and notify said oil mill of such deposit so that the oil mill might withdraw the funds as required in its operations. The said S. W. Sibley having obtained the three notes made the basis of this suit under the agreement above set out, but acting in violation of that agreement and for his own benefit, on May 28, 1926, took said notes, aggregating $25,000, together with the limited guaranty heretofore mentioned, to the North Texas National Bank, and through Mr. Owens, president of said bank, pledged said notes and guaranty under a collateral agreement to secure his own pre-existing individual indebtedness to said bank for some $50,000. E. S. Owens testified, in substance, that the

three notes, together with the guaranty, were presented to him, as president of the bank, by S. W. Sibley; that he told Mr. Sibley he would call up Mr. Conley, who was operating the Kaufman Oil Mill; that, after Sibley left, he did call Conley over long distance at Kaufman, and inquired about the notes, and told Conley they had been offered to the bank, and asked if the notes were all right in every particular, and if the guaranty was all right, and Mr. Conley told him they were; that based on that he went ahead and handled the transaction; that he had no personal knowledge himself of the amount paid for the notes. This witness testified further: "After talking to Mr. Conley and after he told me he had signed these notes and that they were all right, I told him I was contemplating the purchase of these notes. I next handled the $25,000.00 in paper for Mr. Sibley. I received this guaranty from Mr. Sibley."

On cross-examination this witness testified: "To the best of my recollection, I told Mr. Conley that this paper had been offered to us by Mr. Sibley and that he had shown me also the guaranty which was signed by these various men; * * * that Mr. Sibley wanted us to handle this paper for him and wanted to know if the paper was all right in every particular, and he said it was * * * I think he did say that Mr. Sibley was financing and handling paper for them * * * I understood that to mean that Mr. Sibley was accepting paper from them and in turn selling it to other banks and other bankers who would purchase it. To that extent, Mr. Sibley possibly was their agent in handling that paper. I understood that. I wanted to know of Mr. Conley if the paper was all right in every respect and he said it was, and I told him I thought I would handle it for him. I mean by handling it for him, that I would discount the paper for him."

Mr. Conley testified he had no conversation over the phone with Mr. Owens, and that if he did he had no recollection of it. The record shows conclusively, as above stated, that the notes were not purchased by the appellee bank, and that nothing was paid for said notes or the guaranty, but, on the contrary, at that time they were put up with the bank as additional collateral security for a pre-existing indebtedness of S. W. Sibley to the bank. Afterwards the balance due on Sibley's $50,000 due the bank, for which said notes were pledged, together with $35,000 due said bank by S. W. Sibley and Homer Adams, and $10,000 due said bank by the Collin County Realty Company, of which Sibley was a member, were all included in one note for $70,000, and on April 19, 1927, a new note taken for said last-named amount, secured by said $25,000 notes of the Kaufman Oil Mill and other security. On May 21, 1927, $48,000 was realized by appellee bank in cash out of the sale of most of said collateral, other than the Kaufman Oil Mill

notes, which, being credited on the $70,000 note, left a balance due on said note of $21,-200. On February 29, 1928, which was the day before the case was tried, and after an answer had been filed denying liability on these notes, the bank sold all the remainder of its collateral under its collateral agreement to secure its said indebtedness and bought in all the collateral, including the notes involved in this cause, for $24,180.44. The material parts of the limited guaranty which was presented to, and delivered with the oil mill notes to E. S. Owens, president of appellee bank, is as follows:

"For the sum of One Dollar and other valuable considerations, I, we or either of us, jointly and severally, guarantee the payment of, and agree and promise to pay at Dallas, Texas, to S. W. Sibley, Agent, his heirs, administrators, successors and assigns, at maturity, or at any time thereafter as demanded, all notes, discounts and any and all indebtedness or obligations, whether joint or several, or both, or primary or secondary, for which Kaufman Oil Mill is or are, now, or hereafter may become liable or indebted to S. W. Sibley, Agent, his heirs, administrators, successors and assigns, provided, however, that my or our liability hereunder shall not exceed the sum of Two Hundred Thousand and no/100 Dollars ($200,000.00) and the payment of said sum of Two Hundred Thousand and no/100 Dollars ($200,000.00) under this contract to S. W. Sibley, Agent, his heirs, administrators, successors and assigns, by the subscriber or subscribers hereto, such payment to be applied to the indebtedness of the principal debtor as may be determined by the said S. W. Sibley, Agent, his heirs, administrators, successors and assigns, shall satisfy and discharge the obligation of this instrument. * * *

"The intention of this instrument is that the said ――― intends from time to time to execute notes in various amounts, payable to its own order in Dallas County, Texas, containing the usual clauses of attorney's fees for collection, etc., and to sell the same to the said S. W. Sibley or through the said S. W. Sibley to various purchasers, and this guaranty, though made to S. W. Sibley, Agent, his heirs, administrators, successors and assigns, is intended to inure to the benefit of any holder and owner of said note or notes or other indebtedness so sold to or through the said S. W. Sibley.

"Witness my or our hands, this 1st day of July A. D. 1925.          W. G. Crimpler.
          "J. F. Gilmore.
          "J. M. Hardaway.
          "W. T. Conley.
          "Jno. H. Kirby."

E. S. Owens, president of the appellee bank, testified further: "I do not have the date the $70,000.00 note was executed; I could not answer whether it was April 19th, 1927. I have had so many transactions which

Mr. Sibley has been interested in that I could not answer that question. I think possibly that date may be correct * * * I handled the purchase of those $8,750.00 notes for the bank. I do not know that I knew in truth and in fact that all four of them were obligations of S. W. Sibley. I may have thought so. I actually did apply them on this $70,000.00, which was the joint note of S. W. Sibley and the Collin County Realty Company. At that time Mr. Sibley owed us $25,000.00. I think that is correct—I mean on his account, the limit of his personal account; I think that is correct. I think he executed this $70,000.00 note; and the $25,000.00 was included in this $70,000.00 note; and the $35,000.00 represented by the four notes of $8,750.00 I think, was included in this $70,000.00 note and the $10,000.00 of the Collin County Realty Company."

There can be no question but that the notes sued upon for the aggregate amount of $25,000 were executed by appellant Kaufman Oil Mill, and their payment guaranteed by the individual appellants, and that said notes were put in the possession of S. W. Sibley as the agent of the oil mill, with the agreement that he would negotiate or discount said notes, and thereby obtain money for the oil mill to pay its operating expenses. There can be no doubt but that S. W. Sibley breached the trust reposed in him, as such agent of the oil mill, by failing to attempt to raise money for the oil mill by negotiating said notes, but fraudulently, in breach of his trust, hypothecated said notes with the appellee bank as collateral to secure his pre-existing individual indebtedness to said bank for some $50,000, and appellants, never having received one cent for said notes, are now called upon to pay same. Appellee contends the instructed verdict for appellee was fully authorized under the provisions of our Negotiable Instruments Act, as applied to the facts of this case. Section 52 of article 5935 of said Act provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value:

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 55 of said Act provides: "The title of a person who negotiates an instrument is defective within the meaning of this Act, * * * when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

That S. W. Sibley did negotiate the notes in suit in both breach of faith and under such circumstances as amounted to a fraud, and that his title thereto was defective within the meaning of our Negotiable Instruments Act, cannot be doubted. Section 56 of said act provides: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

This last section of said act embodies the well-settled rule of law of practically all our appellate courts for many years in reference to notice of defects by a holder of negotiable instruments. Section 56 of article 5935, Revised Statutes; Goolsby v. Manning et al. (Tex. Civ. App.) 270 S. W. 936; Hamilton-Turner Grocery Co. v. Hander (Tex. Civ. App.) 253 S. W. 833; Foster v. Enid O. & W. R. Co. et al. (Tex. Civ. App.) 176 S. W. 788; Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn. 1, 257 S. W. 403, 31 A. L. R. 1383; 3 R. C. L., § 277; Oschenreiter v. Block, 42 S. D. 151, 173 N. W. 734, 6 A. L. R. page 456; Brannan's Negotiable Instruments Law, § 56. The purchase of a negotiable note is not subject to the ordinary rules of constructive notice which apply to the purchase of property in general; the acquisition of the note under circumstances tending to put a reasonably prudent man upon inquiry merely being evidence tending to show bad faith. Such facts and circumstances as would be permissible in an ordinary case to show that the purchaser had knowledge of facts that should have put a reasonably prudent man upon inquiry are admissible in evidence as tending to show that the purchaser of a negotiable note had actual knowledge of a defect in the title to such note, or as tending to show the purchaser in taking said note, with knowledge of such facts, acted in bad faith. The question of bad faith, if raised by any evidence, is one of fact for the jury. Hamilton-Turner Grocery Co. v. Hander, supra; Goolsby v. Manning et al., supra; Winter v. Hutchins, 20 Idaho, 749, 119 P. 883; McNight v. Parsons, 136 Iowa, 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, 15 Ann. Cas. 665; Brannan's Negotiable Instruments Law, page 447.

In this case the three notes sued upon and the guaranty securing same were presented to the president of appellee bank together, and said guaranty contract was read and examined by him in connection with said notes before he agreed to take same. The president of appellee bank was taking not only the three notes, but also the guaranty contract securing same, and, when he did take the notes, the guaranty contract was delivered to him with said notes. From the guaranty contract, appellee's president was

bound to know that S. W. Sibley was designated as an agent—he is so referred to throughout the instrument—and from the entire instrument, we think, appellee's president could draw no other reasonable conclusion than that S. W. Sibley was the agent of appellant, the Kaufman Oil Mill. From said guaranty contract, the president of appellee bank, we think, knew the purpose and intention of the oil mill in issuing and placing said notes in the possession of S. W. Sibley, its agent, for said instrument recites: "The intention of this instrument is that the said Kaufman Oil Mill intends from time to time to execute notes in various amounts, payable to its own order in Dallas County, Texas * * * and to sell the same to the said S. W. Sibley or through the said S. W. Sibley to various purchasers," etc. The appellee bank, we think, must have understood that the Kaufman Oil Mill was not engaged in speculating in notes or doing a loan brokerage business, but was engaged in the operation of an oil mill, and its purpose in issuing and placing its notes in the hands of S. W. Sibley was to raise money to be expended in the operation of said oil mill. But appellee bank contends that, as the guaranty recites, "And to sell the same to the said S. W. Sibley or through the said S. W. Sibley to various purchasers," etc., the bank was justified in believing that Sibley had purchased said notes from the oil mill. The notes were dated May 1, 1926, and were delivered to appellee bank by Sibley to secure his pre-existing individual indebtedness of $50,000 on May 28, 1926. The president of appellee bank testified, in substance, that he had known Sibley for some time, and had had many transactions with him; that the limit of his personal credit at appellee bank was $25,000. At the time the notes were pledged with appellee bank Sibley was indebted to said bank in the sum of $50,000, and as a member of the Collin County Realty Company, and of Sibley & Chapman, he was indebted to said bank for other amounts. In view of Sibley's financial condition, and other circumstances above set out, all of which the appellee bank, through its president, knew, it is unreasonable to suppose that Sibley would pay $25,000 cash for the notes in question to put up as collateral with appellee bank. The president of appellee bank, before taking said notes, called W. T. Conley, secretary and treasurer of the Kaufman Oil Mill, and asked him about said notes, telling Conley in said conversation one time that he thought he would handle said notes, and, again, that he was contemplating the purchase of said notes. He at no time told Conley he contemplated taking said notes as collateral to secure Sibley's individual debt to the bank. We think the evidence tends very strongly to show that the president of appel-

lee bank at the time he took said notes, knew or believed that they belonged to the Kaufman Oil Mill, and that Sibley had same only as agent, and had no right to pledge them as collateral to secure his individual debt. We have not attempted to set out all the evidence raising the issue of bad faith on the part of appellee in taking said notes, but we think the above is sufficient. The court should have submitted this issue to the jury, and was in error in failing to so do, and in directing a verdict for appellee.

The cause is reversed and remanded.