## WALKER v. COMMERCIAL CREDIT CO., Inc.

### No. 4772.

Court of Civil Appeals of Texas. Amarillo.

June 21, 1937.

Rehearing Denied July 10, 1937.

E. L. Klett, of Lubbock, and W. F. Nix, of Amarillo, for appellant.

Clayton & Bralley, of Amarillo, and Wm. H. Evans, of Lubbock, for appellee.

FOLLEY, Justice.

The parties will be designated herein as in the trial court.

The plaintiff, Mrs. Albert Walker, a feme sole, filed this suit in the Ninety-Ninth district court of Lubbock county. Tex., against the Mott Motor Company, a trade-name under which R. H. Mott operated, and the Commercial Credit Company, a corporation, defendants.

On February 13, 1935, the Mott Motor. Company of Lubbock sold to John W. Thompson a 1935 model Plymouth car and took a note secured by a mortgage on the car, which note and mortgage were

transferred to the defendant Commercial Credit Company. Thereafter, in June, 1935, Thompson defaulted in paying his note and the Commercial Credit Company recovered judgment in the county court of Potter county against Thompson for debt and foreclosure of the mortgage and sold said car at sheriff's sale to the defendant Commercial Credit Company. Thereafter, on September 28, 1935, the Commercial Credit Company, under its credit plan with the Mott Motor Company, sold this car back to the Mott Motor Company for the unpaid balance due by Thompson in the sum of $634.73.

On October 15, 1935, the Mott Motor Company sold this same car to the plaintiff, Mrs. Albert Walker, at which time the plaintiff alleges that the car was represented to her by W. W. Royalty, C. C. Hunt, and R. H. Mott, of the Mott Motor Company, as being a "new" car that had been used only a short time as a demonstrator and had been run no more than 2,100 miles. The plaintiff executed, as part consideration for the purchase price, her note for $702, dated October 15, 1935, payable to the Mott Motor Company, in 18 monthly installments of $39.50 each, and also executed and delivered to the Mott Motor Company a chattel mortgage lien upon the car to secure the payment of the note. On October 16, 1935, the Mott Motor Company sold and transferred the note and mortgage to the Commercial Credit Company for the sum of $584, which was the customary discount made by the Commercial Credit Company upon such instruments for new cars. The automobile was described in the mortgage as a "new car." The manufacturer's Serial Number and Motor Number, 2457204 and PJ96007, respectively, were the same in this mortgage as in the Thompson mortgage formerly held by the Commercial Credit Company.

There is no question but what the Mott Motor Company failed to disclose to the plaintiff that the car was a repossessed machine and that it had been owned and used by Thompson for some three or four months. Thompson testified in the trial of the case that he drove it about 12,000 miles. The testimony shows that Mott showed the plaintiff the speedometer on the car before she bought it and it then had a reading of about 2,100 miles, and it was further represented by Mott and Royalty that the car had been used by them only as a demonstrator. Thereafter, Mrs. Walker paid the November, December, and January installments, but later learning the true facts about the car, refused to pay any further installments. In the meantime, R. H. Mott moved to Topeka, Kan.

In May, 1936, the plaintiff filed this suit against the Mott Motor Company and the Commercial Credit Company, and procured service on R. H. Mott by nonresident notice. Since such was the case and Mott made no appearance on the court, the court dismissed him from the case and the cause was tried between the plaintiff and the defendant Commercial Credit Company. Just two days before the case was tried, the defendant Commercial Credit Company sequestered the automobile. Plaintiff sought damages for the alleged fraud, breach of contract, breach of warranty, and want of consideration, and in the alternative sought to offset any such debt that the Commercial Credit Company might have against her on the purchase price, and further asked for damages for the alleged wrongful sequestration. The plaintiff further pleaded that both the defendants, acting jointly and severally, for themselves, and through their agents, sold the automobile to the plaintiff upon false and fraudulent representations; that both the defendants were guilty of fraud; and that the Commercial Credit Company had actual and constructive notice that the car sold the plaintiff was not a new car but the Thompson used car.

The Commercial Credit Company, which we shall denominate defendant hereafter, alleged it was a good faith purchaser of the note, for valuable consideration, and without notice or participation by it in any of the frauds or misrepresentations made by the Mott Motor Company or its employees, and denied under oath that Royalty or Mott were ever its agents, and while it at one time held a note and mortgage on the same automobile and had foreclosed the same, that it did not know it was the same car but relied solely on the description of the car as set out in plaintiff's mortgage as being a new car. The defendant filed a cross-action against the plaintiff for its debt and for foreclosure of its mortgage. The court heard all the testimony of both plaintiff and defendant, and after the close of the testimony, gave an instructed verdict for the defendant upon its cross-action, denying

plaintiff any relief against the defendant, from which verdict and judgment rendered thereon the plaintiff appeals.

The plaintiff's first proposition is that the court erred in giving the jury a peremptory instruction to return a verdict against the plaintiff for the reason that the plaintiff had introduced evidence that the defendant purchased the note in controversy with actual notice that the car in question was not a new car as represented in the mortgage, and that this issue of notice should have been submitted to the jury. The defendant admitted that it knew that the Thompson car was a used car, but denied that it knew the plaintiff's car was the same automobile. The only positive testimony as to knowledge of the defendant in this respect is from defendant's own witnesses, F. H. Hemphill and E. T. Williamson. Each of these witnesses, who handled the transaction for the defendant, testified that he knew the Thompson car was a used car, but that he did not know the plaintiff's car was the same car, and each relied on the representations made by the dealer, Mott, in the mortgage that the car was a new car. No other witnesses testified as to notice or knowledge on the part of the defendant. The record reflects that the defendant purchased some 9,500 similar notes and mortgages in the year 1935, and purchased some 250 or 300 such notes and mortgages from the Mott Motor Company alone during such year, and that when the defendant resold the Thompson car back to the Mott Motor Company, it had no further use for its file on the car and destroyed the same. The record further shows that the defendant made no examination of the collateral before buying the same.

■ It is a well-settled rule of law in this state that the ordinary rule of notice does not apply to the purchaser of a negotiable instrument for a valuable consideration before maturity. The test in negotiable instrument cases is good faith, and not diligence or negligence. Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co. (Tex.Sup.) 93 S.W.(2d) 701, 704, 106 A.L.R. 821. In the Quanah Case the Supreme Court of Texas, speaking through Judge Critz, says:

"Unless the purchaser has actual knowledge of facts and circumstances that would render the paper noncollectible, or has knowledge of such facts as that a purchase of the instrument would amount to bad faith, it is immaterial that he has notice of such facts as would put a reasonably prudent person on inquiry, and that such inquiry would lead to discovery. * * *

"In connection with the above, it is a rule in this state that in the purchase of a negotiable instrument the title is derived from the instrument itself, and not from the title of the party who transfers it. Ordinarily, one in possession of a negotiable instrument has the power to dispose of it. Certainly, where the one in possession is the payee on the face of the instrument, even in a trust capacity, he has the right in such capacity to negotiate it. Also, it is the law that a negotiable instrument passes as a species of currency without inquiry. If the buyer pays a valuable consideration and acts in good faith, his title cannot be impugned. Greneaux v. Wheeler, 6 Tex. 515; Wilson v. Denton, 82 Tex. 531, 18 S.W. 620, 27 Am.St.Rep. 908; Twohig v. Brown, 85 Tex. 51, 19 S.W. 768; Hamilton-Turner Grocery Co. v. Hander (Tex.Civ.App.) 253 S.W. 833. We here especially refer to the authorities cited in the Hamilton-Turner Grocery Company Case, supra, and also to the applicable sections of article 5935, supra."

■ This same rule has been announced in many other cases in this state, one of which is that of West et al. v. First Baptist Church of Taft et al., 123 Tex. 388, 71 S.W.(2d) 1090, and cases therein cited. All these cases follow the rule that if the buyer of an instrument acted in good faith, and paid a valuable consideration before maturity, his title cannot be impugned.

We do not believe this rule has application to the question now before us, and, if so, only indirectly. The question before us, which has not the benefit of a jury finding, is, Did the defendant act in good faith, or, did it have knowledge of facts and circumstances that its action in taking the instruments amounted to bad faith?

■ Let us review the testimony briefly. The defendant admits that the car in question is the same car that had been formerly sold to Thompson. The description of the car was the same in the two mortgages held by the defendant. The serial and motor numbers of the car were identical in both mortgages. The defendant had purchased the car at the

sheriff's sale in Potter county and later resold the car to the Mott Motor Company. Both of the mortgages were duly recorded in the chattel mortgage records of Lubbock county, where defendant had a resident agent, and where the purchase of the plaintiff's note and mortgage occurred. The defendant, it is true, had made many transactions of this sort in the year 1935, but we are only dealing with one of them. Certainly the volume of business that the defendant did would not change the law of the case. The law places the same burden on all persons and business establishments alike, whether there is one transaction or ten thousand involved. The two witnesses of the defendant, Hemphill and Williamson, each testified that he did not know the car described in the plaintiff's mortgage was the Thompson car, and each of them may have told the truth in that regard, but was the court, without a jury finding, authorized under the law to so find in the face of the fact that there are some circumstances in the case that might indicate the contrary?

In the case of Landon v. Halcomb (Tex.Civ.App.) 184 S.W. 1098, 1099, one V. S. Halcomb, proprietor of a drug store in Bridgeport, gave a written order to the Vernon Advertising Company of Schell City, Mo., for a piano, a set of silver, fountain pens, and advertising matter to be shipped to Halcomb, and attached to the order was Halcomb's promissory note for $400. The note and order were on the same piece of paper, but were separated by a perforated line. The appellant, Landon, purchased this note after it had been separated from the order. The piano involved was never delivered. The jury found that the separation of the two instruments on the perforated line gave the plaintiff notice of the fraud and that he was not a purchaser in good faith. In upholding this finding, the Court of Civil Appeals at Fort Worth said:

"We are of the opinion, further, that the evidence was sufficient to support the findings referred to above, and also the further finding by the jury that plaintiff was not an innocent purchaser and holder of the note. While testimony introduced by plaintiff to refute the latter finding was positive in terms, yet there were circumstances which tended to show the contrary and which presented more than a mere suspicion that such testimony was untrue. The purchase of the note in St. Louis, Mo., within three days after its execution, in Bridgeport, Tex., for an admitted discount of 12½ per cent., the failure of plaintiff to show how the indebtedness for which the note was further discounted, as claimed by plaintiff, arose, his failure to show what, if any, investigation he made to determine the solvency of the maker of the note before he purchased it, his implied denial of a lifelong and intimate acquaintance with Boatwright, the manager of the Vernon Advertising Company, as established by several disinterested witnesses residing in Schell City, Mo., and his further implied denial that he was in the habit of making frequent trips to Schell City where Boatwright conducted the business of payee of the note, as testified to by several of the same witnesses, were some of the circumstances which tended to impeach the alleged good faith of plaintiff in the purchase of the note. * * *

"The issue of bad faith in the purchase of the note, like the issue of fraud, could be established by circumstantial evidence."

In the case of Kaufman Oil Mill et al. v. North Texas Nat. Bank in Dallas, 16 S.W.(2d) 143, 145 (writ refused) the Court of Civil Appeals of Waco lays down the rule that the question of bad faith of purchaser of note from one whose title is defective, if raised by any evidence, is one of fact for the jury. In that case there were only some suspicious circumstances against the good faith of the purchaser whose agent testified that he acted in good faith. In that case, as in the instant case, the court gave a peremptory instruction on this issue, as well as all others. In reversing the trial court, Judge Stanford said:

"The purchase of a negotiable note is not subject to the ordinary rules of constructive notice which apply to the purchase of property in general; *the acquisition of the note under circumstances tending to put a reasonably prudent man upon inquiry merely being evidence tending to show bad faith.* Such facts and circumstances as would be permissible in an ordinary case to show that the purchaser had knowledge of facts that should have put a reasonably prudent man upon inquiry are admissible in evidence as tending to show that the purchaser of a negotiable note had actual knowledge of a defect in the title to such note, or as tending to show the purchaser in taking said note, with knowledge of such facts, acted in bad faith. *The question of bad faith, if raised by any evidence, is one of fact for the jury.*" (Italics ours.)

Section 56 of article 5935, Revised Civil Statutes, in the Negotiable Instrument Act reads as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In discussing this section of the article of the statute, Texas Jurisprudence, Vol. 6, par. 93, says:

"This section of the Negotiable Instruments Act embodies a rule which was firmly established prior to the adoption of that statute. The ordinary rule as to notice does not apply to a purchaser for valuable consideration before maturity. The test in such cases is good faith and not diligence or negligence. Unless the purchaser had actual knowledge of the facts which rendered the paper noncollectible, or of such facts as that a purchase of the instrument would amount to bad faith on his part, it is immaterial that he had notice of such facts as would have put a reasonably prudent man upon inquiry and that such inquiry would have led to discovery. The acquisition of the instrument under circumstances tending to put a reasonably prudent man on inquiry is merely evidence tending to show actual knowledge or tending to show that the purchaser in taking the instrument with knowledge of such facts acted in bad faith. But the question of bad faith as raised by the evidence is one of fact."

█. It can be seen from this and the authorities cited that it would be error to submit an issue to the jury as to diligence or negligence on the part of the defendant. Goolsby v. Manning, et ux. (Tex.Civ.App.) 270 S.W. 936. It is not a question of diligence in this case and we do not wish to be misunderstood in this regard. It is a question of good faith on the part of the defendant. It is not whether the defendant had knowledge of facts and circumstances that would have prompted an ordinarily prudent person to make further inquiry into the matter, but whether or not, from all the facts and circumstances in the case, the defendant had actual knowledge of any defect in said note and mortgage, and, further, did it have such knowledge of such facts that its action in taking the instrument amounted to bad faith. The trial court below took this issue from the jury and decided there was no actual knowledge of any defects on the part of the defendant and that the defendant was not guilty of any bad faith. In other words, the court took the testimony of Hemphill and Williamson as wholly true, and that any circumstances in the case to the contrary as untrue. From the Landon v. Halcomb Case, above, we can see that the issue of bad faith can be established by circumstantial evidence, and from the Kaufman Oil Mill Case, that the question of bad faith, if raised by any evidence, is one of fact for the jury.

From all the authorities cited, we conclude that the court erred in not submitting this issue to the jury and we sustain this assignment.

Appellant's second proposition complains of the action of the trial court in giving a peremptory instruction to the jury when the plaintiff had pleaded and introduced evidence to show that she had a defense to the note sued on and entitled to a cancellation either in toto or pro tanto, the issue was thereby raised as to whether plaintiff was in default in payments to defendant. We think the disposition of the first proposition disposes of the second. We think the question of bad faith on the part of the defendant will first have to be established before plaintiff could take advantage of any offset or cancellation plea.

This is likewise true of plaintiff's third, fourth, fifth, and sixth propositions with reference to the court's failure to submit issues of damages to the jury for the alleged wrongful sequestration of the automobile in question. We therefore deem it unnecessary to pass on these assignments.

For the error of the trial court, as above indicated, the judgment of the trial court is reversed and the cause remanded.