Mrs. Ethelyn West et al. v. First Baptist Church of Taft et al.

No. 6149. Decided May 16, 1934.
(71 S. W., 2d Series, 1090.)

John C. North, of Corpus Christi, Robt. W. Stayton, of Austin, and Milling, Godchaux, Saal & Milling, of New Orleans, La., for plaintiffs in error.

One who purchases a negotiable note, complete and regular on its face, before maturity, and pays therefor a valuable consideration, without notice of an infirmity in the instrument or defect in the title of the person negotiating same, takes such note free and clear of any and all such defects and infirmities, and is an innocent purchaser for value, and entitled to recover on said note. Wilson v. Denton, 82 Texas, 535; Mountjoy Parts Co. v. San Antonio Natl. Bank, 12 S. W. (2d), 609; Campbell v. Rosenow, 32 S. W. (2d), 372; Carpenter v. Longan, 83 U. S., 271, 21 L. Ed., 313; Vernon's Ann. Tex. Stat., Art. 5935.

Where grantor causes a deed of trust to be placed of record for the grantee, in the proper records of the county where the land is situated, such recording constitutes a delivery, whether the original deed of trust is ever thereafter delivered to grantee or not. Russell v. Beckert, 195 S. W., 607; Red River Natl. Bank v. Summers, 30 S. W. (2d), 726; Taylor v. Sanford, 108 Texas, 340, 193 S. W., 661.

A bank advancing money to be used in the construction of a house under an oral agreement that it will be repaid out of a loan being procured by the builder from a loan company, has only an equitable lien, if any, inferior to the lien created by the deed of trust executed to the loan company. Vernon's

Texas Const., Art. 16, sec. 37; Vernon's Tex. Civ. Stat., Art. 5452; Aaron Frank Clothing Co. v. Deegan, 204 S. W., 471; Cook v. Yandell Realty Co., 275 S. W., 850.

*Boone, Raymer & Davis,* of Corpus Christi, *Templeton, Brooks, Napier & Brown,* and *W. L. Matthews, all* of San Antonio, for defendants in error.

The deed of trust of record in San Patricio County, never having been delivered by the Church to take effect as a lien, the passing of the series of notes to plaintiffs in error by the mortgage companies could not operate to make a valid lien of that record against the church properties. Steffian v. Bank, 69 Texas, 517, 6 S. W., 823; Morris v. Logan, 273 S. W., 1019; Thomason v. Berry, 276 S. W., 185; Koppelmann v. Koppelmann, 94 Texas, 40, 57 S. W., 570; Steffian v. Bank, 69 Texas, 517, 6 S. W., 823; 41 C. J., 425.

The Taft Bank, a partnership, under agreement with the First Baptist Church as the property owner assumed to and did provide the labor and material necessary to complete the construction of a church building for the Church on property owned by it, by reason of which it has a mechanics lien and materialmens lien against such property to secure the repayment of the amount paid by it for the labor and material used in construction of the building. Downard v. National Loan & Inv. Co., 55 S. W., 981; First Natl. Bank of Muscogee v. Campbell, 58 S. W., 628.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the Court.

The First Baptist Church of Taft, for the purpose of constructing a church building on lots owned by it in Taft, Texas, made application to Southern Mortgage Company, of Abilene, Texas, for a loan of $20,000. Before the building was begun, the church, on the request of the mortgage company, executed and delivered to the mortgage company for the purpose of "closing the loan" twenty-two promissory negotiable notes aggregating the principal sum of $20,000, payable to Southern Mortgage Company at the office of Mortgage and Securities Company in New Orleans. At the same time the church executed a deed of trust securing the notes and covering the lots upon which the church was to be built and also other lots owned by the church upon which a parsonage was situated. This deed of trust expressly provided that it covered also all buildings, fixtures, furniture, and equipment then located or thereafter to be located upon the lots upon which the church was to be

built. A second and subordinate deed of trust was executed securing the two other promissory negotiable notes payable to Southern Mortgage Company, aggregating the principal sum of $1,000. The notes and deeds of trust, while dated March 9, 1929, were in fact executed May 2, 1929. On the same day, at the request of Southern Mortgage Company, the church caused the two deeds of trust to be filed for record in the office of the county clerk of San Patricio County, and on May 8, 1929, pursuant to the same request, the church mailed the notes to Southern Mortgage Company at Abilene, together with a certificate of the county clerk showing that the two deeds of trust had been filed for record.

It had theretofore been agreed, in the course of the negotiations for the loan, that none of the money should be paid to the church until the building had been entirely completed according to the plans and specifications. It had further been agreed by Southern Mortgage Company that the notes would be held by it in Abilene "until after the money was furnished on the loan."

The church made arrangements with the Taft Bank, Unincorporated, whereby the bank agreed to furnish money to the amount of $20,000 to pay for labor and material in the construction of the building, the money to be advanced as the work progressed and to be repaid the bank when the proceeds of the loan from Southern Mortgage Company were procured. There was an oral agreement between the church and the bank that the bank should have a lien to secure the money so advanced.

Building operations were begun about May 2, 1929, the bank advancing something more than $20,000, which was used in payment for labor and material. The building was completed about October 1, 1929, after the trial of this suit in district court.

A short time after receiving the notes Southern Mortgage Company forwarded them to Mortgage and Securities Company at New Orleans, advising that the construction of the building had just begun and that some time would elapse before the loan would be ready for closing. Southern Mortgage Company was a subsidiary of Mortgage and Securities Company, being wholly owned by it and organized by it for the purpose of doing business in Texas, and all the money loaned by the Southern Mortgage Company was procured from Mortgage and Securities Company.

On June 25, 1929, the company last named sold and delivered the twenty-two first lien notes to plaintiff in error, Mrs.

Ethelyn West, who bought them for her sisters, plaintiffs in error Mrs. Morris and Mrs. Barham, paying for the same their full face value, the principal and accrued interest. The notes had been indorsed without recourse by Southern Mortgage Company, and their payment was guaranteed by Mortgage and Securities Company. A short time thereafter Mortgage and Securities Company failed and its property was placed in the hands of a receiver. The church received nothing for the notes.

This suit was filed by the church against the two mortgage companies, the receiver of Mortgage and Securities Company, the manager of Southern Mortgage Company, Mrs. West and her sisters, Mrs. Morris and Mrs. Barham, and several individuals who constituted The Taft Bank, Unincorporated. The relief sought is cancellation of the notes and the deeds of trust and the removal of clouds from the property of the church. In the alternative, and in the event the notes and deeds of trust are determined to be valid obligations and liens, the church seeks judgment against the two mortgage companies and the manager of Southern Mortgage Company for the amount so determined, with foreclosure of a lien upon any property of the two companies which might be disclosed or discovered.

By cross action Mrs. Morris and Mrs. Barham allege their ownership of the twenty-two notes, and of the lien securing them, and that they purchased the notes before maturity for value and with no knowledge or notice of the alleged infirmities, and they pray for judgment for the principal of the notes, interest, attorneys fees, and for foreclosure of lien.

The Taft Bank alleges the advancement of funds by it for labor and material aggregating about $24,000, that it has a lien securing same which is superior to the lien claimed by Mrs. Morris and Mrs. Barham, and prays for judgment against the church for the amount advanced, with interest and attorney's fees, and for foreclosure of lien.

The case was tried without a jury, the trial court making elaborate findings of fact and conclusions of law. Judgment was rendered cancelling the twenty-two notes held by Mrs. Morris and Mrs. Barham and the deed of trust executed to secure the notes, and also cancelling the two notes aggregating $1,000 held by Southern Mortgage Company and the deed of trust executed to secure them; and judgment was rendered in favor of The Taft Bank against the church for $22,300, with interest, and for foreclosure of lien upon the property of the church. The church dismissed its suit against the manager of

Southern Mortgage Company, and it was adjudged that it take nothing by its alternative suit.

The trial court found that the notes were negotiated and sold by the two mortgage companies to Mrs. West in violation of the agreement under which they were executed and delivered, and in fraud of the rights of the church; that the proceeds of the notes were appropriated by Mortgage and Securities Company; and that the church never received any part of the proceeds of the notes, or any consideration for them.

The trial court further found that at the time she purchased the notes for her sisters Mrs. West "had actual knowledge of the fact that the notes were for a construction loan, that said loan was not completed, that said notes were not ready for negotiation, and that same were not in fact then negotiable"; and also that "defendants Mrs. West, Mrs. Morris and Mrs. Barham, at the time the notes were purchased by them and delivered to them, as aforesaid, took same with notice of the defects in the title of Mortgage and Securities Company mentioned in preceding paragraphs of these findings, and did not purchase same without notice in good faith and are not purchasers in good faith for value or holders in due course."

The Court of Civil Appeals on first hearing reversed and remanded the cause, holding that there was no evidence charging Mrs. West and her sisters with fraud or bad faith, and that they were innocent purchasers of the notes for value before maturity. On rehearing the judgment of the trial court was affirmed, the majority of the Court of Civil Appeals holding that there was evidence sufficient to sustain the finding of the trial court upon the issue of bad faith. 42 S. W. (2d), 1078.

Within the terms of the negotiable instruments law there was infirmity in the notes and the title of Mortgage and Securities Company which negotiated them was defective, because it had been agreed that the notes were to be held and not negotiated until the building was completed and the money represented by the notes paid, and because the notes were negotiated in violation of this agreement, in breach of faith and in fraud of the church. Secs. 52-55, Art. 5935, R. C. S., 1925.

The important question presented is whether there is any evidence to sustain the findings of the trial court that Mrs. West had actual knowledge of the infirmity or of the defect in the title and that she did not act in good faith in acquiring the notes.

By the terms of Section 52 of Art. 5935 one is not a holder in due course who, although he purchased a negotiable instrument before maturity and for value, had notice at the time it

was negotiated "of any infirmity in the instrument or defect in the title of the person negotiating it."

· Section 56 of the said Article is as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The first inquiry is whether there is any evidence that Mrs. West at the time she purchased the notes had actual knowledge of the infirmity or defect.

As has been stated, the infirmity in the notes was the agreement of Southern Mortgage Company that they would be held and not negotiated until the building was completed and the money represented by the notes paid to the church, and the defect in the title of Mortgage and Securities Company, which negotiated the notes, was that it negotiated them in violation of that agreement.

Neither Mrs. Morris nor Mrs. Barham had any connection with the negotiations by which the notes were acquired. Mrs. West acted for her two sisters, buying part of the notes for one and part for the other. The three sisters resided in Louisiana. None of them had any acquaintance with or in Taft, Texas. They had no communication with the church at Taft. Mrs. West had bought other notes from Mortgage and Securities Company. The representatives of that company knew that she would take no construction loans, that is, loans secured by buildings to be completed.

The notes were first presented to Mrs. West in the early part of May, 1929, by one Wood, who was a salesman for Mortgage and Securities Company. He submitted to her and left in her possession for examination a prospectus of the loan, the written application of the church to Southern Mortgage Company for the loan, and certain other written and printed information. The application described the notes to be executed, stating that they were to be dated on or about May 1, 1929, and would be secured by a deed of trust upon the property owned my the church, describing it, and that the lots would be improved by a two-story and basement brick church building estimated to cost $37,500. It stated that the building would be completed on or before July 1, 1929. Contrary to the agreement between the church and Southern Mortgage Company that no money would be advanced until the building was finished, the application stated that the proceeds of the loan would be available as the construction proceeded, no pay-

ment to be made, however, until construction had reached the point where the net proceeds to be advanced by the mortgage company would complete the building and that 15% of the total amount of the contract price should remain in the hands of the mortgage company until completion of the work and final inspection.

Mr. Wood testified substantially as follows: That he showed Mrs. West the data which he had received from the files of Mortgage and Securities Company, including the application for the loan; that he discussed the merits of the loan with Mrs. West, but did not recall making any particular statements or representations to her concerning the notes or the deed of trust other than what was shown in the data submitted to her; that he was informed while handling the account of Mrs. West and her sisters that all securities purchased by them must be on completed properties and not on properties in process of construction; that when he made the preliminary offering of the loan he knew that the building was in process of construction, but when the notes were delivered to her he was convinced that the building had been fully completed; and that at the time he delivered the notes and accepted payment for them he did not know that the money represented by the notes had not been paid to the church and did not advise Mrs. West that it had not been paid.

Mr. Jackson, vice-president of Mortgage and Securities Company, testified that sometime before the notes were sold Mrs. West asked him whether or not he considered the Taft church loan a sound one, and he told her he considered it a good loan when ready for delivery, and that he made no other statements to her as to the loan, the notes or the deed of trust.

Mrs. West, after going over the instruments left with her and considering the loan for three or four days, advised Mr. Wood that she would take the loan when it was ready for delivery. About six weeks after her first conversation with Mr. Wood he telephoned her that the loan was ready for delivery. Thereupon she went to the office of the Mortgage and Securities Company, examined the notes, the indorsement of Southern Mortgage Company, and the guaranty of Mortgage and Securties Company, and completed the purchase. She made no inquiry about the building or the loan of any other person than those who represented the mortgage company with which she dealt. She did not undertake by correspondence or otherwise to ascertain whether the building had been completed or whether it had been erected at all. She testified that she relied upon the statment made to her by Mr. Wood that the loan was ready

for delivery; that nothing had occurred to cause her to be suspicious about the legality or validity of the notes; and that she did not know that the church had raised any question as to the notes until a short time before this suit was filed.

Mrs. West, when interrogated on cross examination as to her knowledge with respect to the notes, testified as follows:

"As to whether or not it struck me as being worthy of investigation that the application showed that it was a construction loan, I desire to state that the loan was not to be bought by me until it was a finished thing. I knew at the time it was first presented to me that was not a finished thing. When Mr. Wood first approached me with reference to buying these notes and exhibitied to me the papers, including the application, I did look it over. I wanted to see what security I was getting. From that application I saw it was on a building not yet completed. I thought the application stated that the building had not yet been completed. I did not know that it had not been started. At the time he first presented the loan to me he did not offer it for sale. He gave me these notes, if I wanted the loan, when it was a finished thing. He gave me that prospectus and this descriptive matter and this application so I could go over it and consider it and determine if I wanted the loan when it was finished. With reference to my taking his word for it when he told me the loan was finished, I had no reason to doubt his statement. I took the notes. I had this application in my possession at that time, but I had every reason to belieive the building was completed. * * *

"With references to my making any attempt to ascertain whether or not this church building had been erected as contemplated to be erected and completed, I desire to state that Mr. Wood had called me and said that the building was completed and that the loan was ready for delivery. It was perfectly understood by me and everybody in the Mortgage & Securities Company that I would take no loan except completed loans. * * *

"With reference to whether or not I made any attempt to ascertain from the officials of this church whether or not that building had been completed, and with reference to whether or not I merely took the word of Mr. Wood that the loan was ready for delivery, I desire to state that I took the word of a supposedly reputable man. * * *

" * * I did ask for a picture of the completed church. When the notes were being delivered to me I saw Mr. Ogden when I got up to leave with the notes. He asked me if Mr. Wood fixed me up all right and I said, 'Yes, but I want a picture of

the finished church.' I told him that I had just bought the First Baptist Church of Taft notes, and he said, 'You have not got it?' and I said 'No, and I want it,' and he said, 'We will have to get it for you,' and I said, 'I want Mrs. Morris and Mrs. Barham to see the church upon which they have loaned their money." He told me that he thought he would get it for me in about a week. * * * *

" * * With reference to whether or not it occurred to me that the best source of information with reference to the character of the building and as to whether or not the building had been completed and had been accepted by the First Baptist Church of Taft as completed would be the officers of that church, I desire to state that I had no reason to doubt any of the representations that were made by an entirely responsible company. * * * With reference to whether or not I knew as a matter of fact that if that building had not been completed there would have been a question raised about those securities, I had no knowledge of any dealings between Mortgage & Securities Company and the Church of Taft, Texas. * * * '

Mrs. West testified with reference to another loan offered her:

"I said to him, 'That loan was offered to us before, and it is a construction loan, and I said I would not touch a construction loan with a forty foot pole.' "

■ It is apparent from the testimony of Mrs. West and the other two witnesses, as above quoted and stated, that in their use of such phrases as "the loan is not ready for delivery," "the loan is not a finished thing," and the like, they were referring to the fact that the building was not completed and that, knowing that Mrs. West would not accept a construction loan or one secured by an unfinished building, they meant to say that the notes therefore were not ready for delivery to her. Thus the information which she acquired from the application for the loan and from the statements made to her by the representatives of Mortgage and Securities Company was that when the notes were first presented to her the building was not completed and that at least a part of the consideration for the notes had not been paid by the mortgage company. She knew that the consideration was executory or in part executory. But this did not amount to knowledge that there would be a breach of the mortgage company's executory obligation. Knowledge that a note was given in consideration of the executory agreement of the payee will not deprive the indorsee of the character of a holder in due course unless he has notice of a breach

of such agreement. In the absence of knowledge or notice of a breach he may presume that the agreement will be performed as stipulated. Lozana v. Meyers (Com. App.), 18 S. W. (2d), 588; C. H. Mountjoy Parts Co. v. San Antonio National Bank, 12 S. W. (2d), 609; Forster v. Enid, etc. R. Co. 176 S. W., 788; Buchanan v. Wren, 10 Texas Civ. App., 560, 30 S. W., 1077; 3 R. C. L., p. 1067.

The fact that the building was unfinished, in the absence of knowledge of the oral agreement to hold the notes, in no way affected the negotiability of the notes. There is no evidence that Mrs. West ever knew of the agreement between the church and Southern Mortgage Company that the notes would be held at Abilene and not negotiated until the building had been completed and the money paid. The finding of the trial court that Mrs. West and her sisters knew at the time of their purchase of the notes of the infirmity in them and of the defect in the title of the mortgage company is not supported by evidence.

■ The second inquiry is whether there is any evidence that Mrs. West, at the time the notes were acquired, had knowledge of such facts that her action in taking them amounted to bad faith.

The trial court found both actual knowledge of the infirmity and defect in title and bad faith on the part of Mrs. West. The affirmance by the Court of Civil Appeals appears to rest upon the conclusion that there was evidence sufficient to support the trial court's finding that Mrs. West acted in bad faith in acquiring the notes.

Judge Garrett, in Wilson v. Denton, 82 Texas, 531, 535, 18 S. W., 630, thus stated and explained the settled rule in this state and in practically all of the other states, and of which Section 56 of Article 5935 is but a restatement:

"The ordinary rule of constructive notice which applies to the purchase of property is not applicable in the case of negotiable instruments. As promotive of their circulation a liberal view is taken, which makes the bona fides of the transaction the decisive test of the holder's right. *He is entitled to recover upon it if he has come by it honestly.* Greneaux v. Wheeler, 6 Texas, 525; 1 Dan. Neg. Inst., sec. 775. It matters not how the vendor came in possession of the bill or note, whether by theft, or fraud, or honestly; the title of the transferee does not depend upon the title of the vendor, but upon his possession, and if the buyer has acted in good faith and paid a valuable consideration his title can not be impugned. An early English case (Gill v. Cubitt, 3 Barn. & Cress., 466,) laid down the

principle, that although the holder had given value for the bill or note, yet if he took it under circumstances which ought to have excited the suspicions of a prudent and careful man, he could not recover. This was a departure from the earlier rule, which regarded the bonafides as the crucial test by which it was to be determined whether or not the purchaser should be protected against defenses that would be valid against the transferer of the note. But the earlier rule was soon again reverted to, and afterward made even more liberal, and *it became the law, that while gross negligence might be evidence tending to show mala fides, and as such admissable, it did not in itself amount to proof of mala fides, and was not sufficient to deprive the holder of his right to recover*. If it should be left to a jury to determine as to the degree of caution which a prudent man must exercise on taking such an instrument, it would lead to much perplexity and to frequent injustice. This is the law deduced from the English decisions by Mr. Daniel in his admirable work on Negotiable Instruments, section 770, et seq." (Italics ours.)

In that case Wilson, the payee, intrusted negotiable notes to Denton to sell for him to a designated person. Denton, in violation of his trust, sold the notes to Cotter and McMullan for their two notes payable to Denton's wife, and at a substantial discount. The purchasers, although they met both the payee and the maker daily, did not speak to them about the transaction or about the notes. They relied implicity upon the statements made to them by Denton. A judgment in favor of the purchasers of the notes was affirmed, the court holding that they did not have actual knowledge of the invalidity of Denton's title, and that the facts were not sufficient to charge them with a want of good faith.

In the comparatively recent case, Campbell v. Rosenow, 32 S. W. (2d), 372, in which application for write of error was refused, it was held that there was not even a circumstance to sustain the judgment of the trial court that an indorsee of promissory notes was not a purchaser in good faith, although the evidence was that notes in the principal sum of $9,050 payable to the order of the maker and bearing no other indorsement than his in blank, were bought for $7500 from a stranger a short time after their execution and without any injury whatever.

Goodman v. Simonds, 20 How., 343, 15 L. Ed., 934, one of the leading cases on the question under consideration, announces substantially the same rule as that quoted above from Wilson v. Denton. It holds that facts and circumstances which

would excite the suspicion of a careful and prudent man are not sufficient to destroy the title of the purchaser of a negotiable instrument for value. It approves what the opinion states to be the settled law in all English courts that proof that the plaintiff had been guilty of gross negligence in acquiring the bill ought not to defeat his right to recover.

The case last referred to is approved and followed in Murray v. Lardner, 2 Wall., 110, 17 L. Ed., 857, 859, in which the court thus states its conclusion:

"Suspicion of defect of title or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part."

The same rule is announced in Cromwell v. County of Sac, 6 Otto, 51, 24 L. Ed., 681, 686.

In Foster v. Augustanna College & Theological Seminary, 92 Okla., 96, 218 Pac., 335, 37 A. L. R., 854, the court, after stating there must be either actual knowledge or bad faith to deprive a purchaser before maturity and for value of the privilege of being a holder in due course said:

"Even gross negligence on the part of a taker of a negotiable instrument will not defeat the title of a holder for value and before maturity."

A carefully written article by George W. Rightmire, entitled "The Doctrine of Bad Faith in the Law of Negotiable Instruments" appearing in Volume 18, pp. 355 and following of Michigan Law Review contains among others the following conclusions: That when bad faith is the point of inquiry suspicious circumstances must be of a substantial character, and if such circumstances do not appear, the court can arrest the inquiry; that we are not brought nearer to an answer to the inquiry, Did he take in bad faith? by considering matters of being put upon inquiry and the reasonably prudent man; that it is not failure to inquire, but the dishonest purchase which establishes bad faith, that is, the facts known to the taker must be such that his buying with such knowledge amounts to dishonest dealing toward the defendant. The views expressed are in harmony with the rules announced by the authorities which have been cited.

■ To summarize:

(1) Knowledge of facts merely sufficient to cause one of ordinary prudence to make inquiry, with failure to make such inquiry, is not evidence of bad faith. To apply the contrary

rule would be to return to the rejected doctrine of the earlier English case, that one acquiring a negotiable instrument under circumstances which ought to excite the suspicion of a prudent person could not recover, for in the application of such contrary rule, the jury would be permitted to find bad faith where the evidence proves only ordinary negligence.

(2) Even gross negligence is not the same thing as bad faith and does not of itself amount to proof of bad faith, although it may be evidence tending to prove bad faith.

(3) To constitute evidence of bad faith, the facts known to the taker must be such as reasonably to form the basis for an inference that in acquiring the negotiable instrument with knowledge of such facts he acted in dishonest disregard of the rights of defendant.

Statements are found in the decisions, as for example in Kaufman Oil Mill v. North Texas National Bank, 16 S. W. (2d), 143 (application for writ of error refused), to the effect that such evidence, as would be admissable in an ordinary case to show that the purchaser had knowledge of facts that should put a reasonably prudent person upon inquiry, is admissible as tending to prove that the purchaser of a negotiable instrument in taking it with knowledge of such facts acted in bad faith. This does not mean, however, that knowledge of suspicious circumstances of whatever character constitutes evidence from which bad faith may be inferred. The consummation of the purchase of a negotiable instrument with knowledge of suspicious circumstances sufficient only to put an ordinarily prudent person upon inquiry would convict the purchaser of negligence, not of dishonesty. To serve as evidence to support a finding of bad faith, the unheeded suspicious circumstances must be of a substantial character and so strong that bad faith rather than merely negligence can reasonably be inferred from them. Evidence may be admissible as tending to prove a fact to be established without being sufficient of itself to support a finding of the fact.

Applying the rules which have been discussed to the facts in the record, we are unable to find any evidence supporting the trial court's finding of bad faith on the part of Mrs. West. A circumstance indicating good faith is her payment of full value for the notes. Such fact is not conclusive evidence, but it tends strongly to prove good faith. Canojoharie National Bank v. Diefendorf, 123 N. Y., 191, 25 N. E., 402, 10 L. R. A., 676; Kelso & Company v. Ellis, 224 N. Y., 528, 121 N. E., 364. She was not dealing with a stranger, but with a mortgage company from which she had bought other notes and which, as

she testified, she believed responsible. While she did learn six weeks before she bought the notes that they represented a construction loan, the proceeds of which were to be advanced as construction proceeded, and that the building was not then completed, the information thus acquired gave her no knowledge of an infirmity in the notes. Futhermore, she was assured at the time of her purchase, and by the salesman from whom she obtained her first information about the notes, that they were then ready for delivery. In the absence of anything to cause her to doubt the truth of the representations last made to her, she must reasonably have believed from them that during the six weeks the building had been completed and the proceeds of the loan paid. There is no evidence that Mrs. West knew or had reason to believe that the mortgage company was in financial straits, and no evidence of any statements or acts by representatives of the company which should have aroused suspicion.

■ Even if Mrs. West, in buying the notes without making inquiry of the maker, or of some person other than the seller, in order to ascertain with certainty that the building had been completed and the consideration fully paid, failed to exercise that care which a cautious person, or even one of ordinary prudence, would have exercised (which we need not and do not decide), her action in acquiring the notes without such inquiry would be nothing more than negligence; it would not amount to dishonesty, and would not be evidence of bad faith.

Nor do we believe that the facts in the record constitute evidence of gross negligence which, as said in Goodman v. Simonds, 20 How., 343, 15 L. Ed., 934, 942, "is defined to consist of the omission of that care which even inattentive and thoughtless men never fail to take of their own property."

The trial court found that the deed of trust, although filed for record by the church upon the request of Southern Mortgage Company, were not filed with the intention to deliver the same, but with the intention that they were not to take affect as liens unless and until the amount of money evidenced by the notes had been advanced by Southern Mortgage Company to the church; and further found that the deeds of trust after they were recorded were not forwarded to the mortgage company or to the trustee but remained in the possession of the church. Following this finding the trial court concluded that the deeds of trust were ineffective and did not create any lien.

Based upon this finding and conclusion defendants in error contend that no lien was created by the deed of trust securing

the twenty-two notes because there was not an effective delivery.

There is no direct testimony that the deed of trust was not to become effective until the money represented by the notes was paid. Although there is a general statement in the testimony of the witness Binford to the effect that in the preliminary negotiations a representative of Southern Mortgage Company stated that all papers and notes would be held until the completion of the building, the testimony of the witness Tackett to the particular agreement relied upon by the church and definitely stated is that Mr. Polk, acting for Southern Mortgage Company, agreed that the notes would be held in Abilene until the money was paid. Later the mortgage company prepared the notes and deeds of trust and forwarded them to the church, requesting that after the execution of them the deeds of trust be filed for record and the notes and a certificate of the county clerk, showing that the deeds of trust had been filed, be returned to the mortgage company. These instructions were followed and the church, a few days later, mailed the notes and the clerk's certificate to the mortgage company, with a letter stating that it was mailing "all closing papers pertaining to the First Baptist Church loan." Thereafter the church caused the deeds of trust to be included in a supplemental abstract and sent it to the mortgage company. If a condition attached to the deeds of trust, it was but the one and same condition that attached to the notes. The deeds of trust were executed for the purpose of securing the notes and were intended to be effective for that purpose and to the same extent that the notes were effective.

■ The trial court's finding and conclusion ignore the settled principle that a mortgage securing a negotiable note is but an incident to the note and partakes of its negotiable character. As stated in the opinion in Carpenter v. Longan, 16 Wall., 83 U. S., 271, 21 L. Ed., 313, 315, "The note and mortgage are inseparable; the former as essential, the latter as the incident."

The Supreme Court of Texas, in Pope v. Beauchamp, 110 Texas, 271, 219 S. W., 447, held that the rule of lis pendens does not affect the right to the debt or lien of the bona fide purchaser of a negotiable note, basing its decision upon the necessary inseparability of the note and lien. Justice Greenwood quoted with approval from the opinion of the Supreme Court of the United States in the case last cited, and said:

"We are further of the opinion that the protection which the law gives the bona fide holder of negotiable paper extends

to a lien which is a mere incident of the debt evidenced by the paper, in the absence of actual or constructive notice of some defect in the lien. The bona fide purchaser has the same right to rely on an incidental and inseparable lien as on any other feature of a negotiable note. Hamblen v. Folts, 70 Texas, 135, 7 S. W., 834. We therefore regard as thoroughly sound the declaration of the Supreme Court of Missouri, in Mayes v. Robinson, 93 Mo., 114, 5 S. W., 611, that: *'If the defendant took the note discharged of any equities to which it was subject in the hands of the payee, the deed of trust passed to him discharged of such equities to the same extent.* Logan v. Smith, 62 Mo., 455. *The deed of trust, being incident to the note, partook of the negotiability of its principal.* Hagerman v. Sutton, 91 Mo., 519, 4 S. W., 73, and authorities cited. *If the defendant was a bona fide holder of the note, for value, before maturity, without notice, he was in equal measure such bona fide holder of the deed of trust.'"* (Italics ours.)

On this authority we conclude that when Mrs. West became the bona fide holder of the notes for value before maturity she became in equal measure such bona fide holder of the deed of trust which was executed to secure them.

■ It is, of course, true that a deed of trust to be effective must be delivered, but we are of the opinion that a constructive delivery was proven by the undisputed evidence.

"If the mortgage is made in pursuance of a previous agreement of the parties to place a mortgage on the specific property, which the mortgagee has agreed to accept, then the act of the mortgagor in filing it for record in the proper office is a sufficient delivery of it. * * * * And when a sufficient delivery has thus been effected, it is not counteracted by the fact that the mortgagor obtains the possession of the mortgage from the recorder's office, after it is recorded, and retains it." 41 C. J., p. 427.

See also the following authorities which hold that the filing for record by the grantor at the request or with the consent of the grantee or mortgagee amounts to a constructive delivery. Newton v. Emerson, 66 Texas, 142, 18 S. W., 348; Russell v. Beckert, 195 S. W., 607; Red River National Bank v. Summers, 30 S. W. (2d), 726; 8 R. C. L., p. 1006.

The retention of the deed of trust by the church after it was filed for record is unimportant if, as clearly appears to be true, it was executed and filed for record for the purpose of creating a lien to secure the notes. Title may pass without actual manual delivery of the instrument. The controlling question is

the grantor's intention.  Taylor v. Sanford, 108 Texas, 340, 345, 193 S. W., 661; McCartney v. McCartney, 93 Texas, 359, 364, 55 S. W., 310.

■  In Kopplemann v. Kopplemann, 94 Texas, 40, 57 S. W., 570, it is held that the depositing of a deed for record by the grantor is sufficient evidence of delivery but that it is not conclusive and that, in the absence of actual delivery to the grantee, the effect of a deed thus recorded depends upon the intent with which the acts relied upon as taking the place of actual delivery were done.  In the instant case the filing of the deeds of trust was a part of the closing of the loan, and the intention of the grantor undoubtedly was to create liens fully effective to secure the notes if and when they were effective.  There is nothing in the record to limit or qualify the grantor's intention except the oral agreement that the notes would be held until the church was completed.  By reason of that oral agreement, the notes and the deeds of trust were subject to equities while the notes were in the hands of the payee, but under the rule announced in Pope v. Beauchamp, above discussed, the deed of trust securing the twenty-two notes sold to Mrs. West passed to her discharged of such equities to the same extent that the notes were discharged of them.

■  Since there is no assignment by the First Baptist Church complaining of the judgment in favor of the Taft Bank for forclosure of lien, the only question presented here with respect to such lien is whether the bank has a lien superior to that securing the notes purchased by Mrs. West.

A lien is asserted to exist in favor of the bank, first, on the ground that it advanced money to pay for labor and material in the construction of the building, and second, on the ground that the church orally agreed that the bank should have a lien to secure the repayment of the money so advanced.

The Constitution and the statute give liens to mechanics and materialmen for the value of labor done and material furnished.  They do not provide for liens in favor of persons advancing money to pay for labor or material.  Constitution, Art. 16, Sec. 37; Revised Civil Statutes, 1925, Art. 5452.  It was held in Gaylord v. Loughridge, 50 Texas, 573, that a mechanic's lien statute in substantially the same terms as Article 5432 did not protect a loan of money made and used for the purchase of material and the payment of labor.  That case is cited with approval in Hess & Skinner Engineering Co. v. Turney, 110 Texas, 148, 156, 216 S. W., 261, and in Employers Casualty Co. v. County of Rockwall, 120 Texas, 441, 448, 35 S. W. (2d),

690, 38 S. W. (2d),, 1098. See also note and citation of many authorities in 74 A. L. R., pp. 522 and following, supporting the general rule that a mechanic's or materialman's lien does not exist in favor of a third person advancing money with which to pay for labor or material.

As to the oral agreement, a mortgage or other lien upon real estate cannot be given by parol. Allen v. Allen, 101 Texas, 362, 107 S. W., 528; Home Investment Co. v. Fidelity Petroleum Co., 249 S. W., 1109 (application for writ of error refused); Aaron Frank Clothing Co. v Deegan, 204 S. W., 471 (application for writ of error refused); 20 Tex. Juris., p. 288, 25 Tex. Juris., p. 796.

The bank was fully informed about the negotiations for the loan to be made upon the church property by Southern Mortgage Company, and did not agree to make the temporary advancement to the church until it was shown the definite commitment of the loan company to pay the $20,000 to the church when the building was completed. Two of the members of the partnership constituting the bank were signers of the written instrument guaranteeing the payment of the notes to the Southern Mortgage Company, which instrument described the notes and the deed of trust to be executed. The money advanced by the bank was evidenced by notes executed by the church, the first of date June 4, 1929, and on which date the first money was advanced by the bank. This was long after the execution of the notes to Southern Mortgage Company and the filing of the deeds of trust securing them.

Without determining, as between the church and the bank, the correctness of the trial court's judgment that a lien exists in favor of the bank, we conclude, from the facts in the record and under the authorities above cited, that such lien, so adjudged to exist, is inferior and subordinate to the lien created by the deed of trust securing the twenty-two notes.

Any decision of this case would work a regrettable hardship upon one or more of the parties. This unfortunate result has its source in the misplaced confidence of the church and the bank in the mortgage company, and more particularly it flows from the act of the church in intrusting the negotiable notes to the mortgage company. "If one of two innocent persons must suffer by deceit, it is more consonant to reason that he who 'puts trust and confidence in the deceiver should be a loser rather than a stranger.'" Carpenter v. Longan, 16 Wall., 83 U. S., 271, 21 L. Ed., 313, 315.

The judgment of the Court of Civil Appeals and that of the

district court are reversed and the cause is remanded for trial in accordance with this opinion.

Opinion adopted by the Supreme Court, May 16, 1934.