### FIRST BAPTIST CHURCH OF TAFT et al. v. WEST et al.

#### No. 10254.

Court of Civil Appeals of Texas. San Antonio.

June 29, 1938.

Rehearings Denied Oct. 26, 1938.

Boone, Henderson, Boone & Davis, of Corpus Christi, and Brooks, Napier, Brown & Matthews and Harper Macfarlane, all of San Antonio, for appellants.

Milling, Godchaux, Seel & Milling, of New Orleans, La., and John C. North, of Corpus Christi, for appellees.

SMITH, Chief Justice.

This is the second appeal in this case. West et al. v. First Baptist Church, Tex. Civ.App., 42 S.W.2d 1078; Id., 123 Tex. 388, 71 S.W.2d 1090.

The suit was originally brought by the First Baptist Church of Taft to cancel certain promissory notes for amounts aggregating $20,000, admittedly executed by it in favor of Southern Mortgage Company, a Texas corporation, and afterwards transferred by that concern to Mortgage & Securities Company, a Louisiana corporation, and by it to Mrs. Ethelyn West (for herself and her two sisters) a resident of the City of New Orleans, who paid face value therefor. Mrs. West answered and, reconvening, sought to recover of the church the amount of the notes and to foreclose a deed of trust lien given by the church, upon its church property, to secure said notes.

The notes were given by the church to the Southern Mortgage Company in consideration of the latter's promise of a loan of $20,000, ostensibly to be advanced and used for building and equipping a house of worship on certain lots owned by the church, but which amount, by final agreement between the parties, was not to be advanced by the mortgage company until after the completion of the building. Pending, and in reliance upon the promised advancement by the mortgage company, the Taft Bank, an unincorporated partnership, advanced the money used for said purposes. The bank intervened in this suit, seeking to recover of the church for said advancements and to establish and foreclose a lien, superior to said deed of trust lien, to secure payment of the money judgment prayed for.

Neither the Mortgage Company, nor any one else for it, ever advanced a penny of the promised loan to the church. On the contrary, the Mortgage Company assigned the notes and lien to its parent, said Mortgage · & Securities Company, which in turn hypothecated them to Mrs. West, collected from her the face value thereof, pocketed the proceeds, and escaped responsibility through the immunity of insolvency. It is obvious from the record that the two related corporations, officially interlocked and primed for such practices, deliberately deceived the church into executing the notes and lien, and passed them off to Mrs. West as bona fide obligations, taking their full face value, and giving nothing in return. In the former appeal the Supreme Court held that, notwithstanding the concededly fraudulent conduct of the two corporations, Mrs. West was an innocent purchaser of the notes and was entitled to recover thereon from the church, since the record showed that she acquired the same under circumstances which did not amount to bad faith. 123 Tex. 388, 71 S.W.2d 1090. The court below, upon the last trial, returned the same finding, upon a record not substantially different from that made in the former trial, and that finding is binding upon this Court in this appeal.

We can see no good purpose to be served in undertaking to set out in this opinion the voluminous evidence upon that phase of the case, but deem it sufficient to refer to and adopt the very full statement thereof by Judge Smedley of the Commission of Appeals upon the former appeal, 123 Tex. 388, 71 S.W.2d 1090, in view of our conclusion that there is no substantial or material difference between the records in the former and present appeals. This phase of the present appeal is briefed by the church under its propositions 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 18, 19, 20 and 21, all of which must be overruled, together with the Taft Bank's fourth and fifth propositions. In that connection and for other purposes in this decision, we copy pertinent findings of the trial judge upon the last trial:

"3d. During the early part of 1929, plaintiff (church) decided to erect a church building * * * at a cost of approximately $37,500.00, and to equip same * *

and to enable it to do so, had to borrow $20,000.00, and in connection with such loan Kelly Polk, a representative of the Southern Mortgage Company met with R. O. Tackett, President of the Board of Trustees, and other members of a Committee appointed by plaintiff for such purpose, in the town of Taft, and while Polk was there an application for the loan was signed and forwarded to the Southern Mortgage Company.

"4th. Among other things, the application stated that the building would be completed on or before July 1st, 1929, and that the net proceeds of the loan available for construction work would be paid out by the Southern Mortgage Company as construction proceeded, but, as a matter of fact, it was understood between the said Kelly Polk and the representatives of plaintiff that the proceeds of the $20,000.00 loan would not be paid until the building had been fully completed and accepted, and to enable plaintiff to construct the building, it made an agreement with the Taft Bank to furnish the money, the Bank to be repaid with the proceeds of the loan after the building had been completed.

"5th. During the time Kelly Polk was in Taft in connection with the loan, as above mentioned, he made an agreement with plaintiff to hold the $20,000.00 series of notes in the office of the Southern Mortgage Company, in Abilene, until the church building had been completed and accepted, but the Southern Mortgage Company was not advised of such agreement by Polk, or anyone else.

"6th. After an abstract of title to the property had been approved by the attorney for the Southern Mortgage Company, it was returned to plaintiff, together with twenty-two first mortgage notes, aggregating $20,000.00, and a deed of trust securing these notes as a first lien, * * *; a Resolution to be passed by plaintiff's Board of Directors, a certificate as to Notary and a certificate of filing for the County Clerk to sign, with a letter dated April 18, 1929, instructing plaintiff to have the Resolution passed by its Board of Trustees; the deeds of trust, and first and second mortgage notes, signed by the President of its Board of Trustees, attested by the Secretary, with the church seal impressed, and to then have the waiver of restrictions, Resolution of the Board of Trustees, and the first and second lien deeds of trust, filed for record, and after they were recorded, have the ab-

stracts supplemented to include these instruments, and then return the abstract, supplemental abstract, notes, certificate of Clerk, etc., to the Southern Mortgage Company.

"7th. The Resolution was adopted by the Board of Trustees and, among other things, provided that R. O. Tackett be authorized and directed to execute, acknowledge and deliver to James F. Holliday, Trustee, such deed of trust or mortgage as may be required by the said Southern Mortgage Company to secure the payment of the indebtedness; that the deeds of trust and notes bear date of March 9, 1929, and directed R. O. Tackett, to execute, acknowledge and deliver any and all other papers and documents required and necessary in connection with said loan, said notes to be payable to the Southern Mortgage Company, or bearer, at the office of the Mortgage & Securities Company of New Orleans, Louisiana, and further authorized and instructed the said R. O. Tackett to deliver the notes to the Southern Mortgage Company, and to receive the proceeds of the loan, and give receipts and acquittance therefor.

"8th. After this Resolution had been passed, and the two deeds of trust, and both series of notes executed, R. O. Tackett, acting for plaintiff, filed same for record in the office of the County Clerk of San Patricio County, Texas, on May 2nd, and then had the abstract supplemented to include the resolution and the deeds of trust, and on May 8th, sent the abstract, together with the notes, the Resolution and the notice of the filing executed by the County Clerk, to the defendant, Southern Mortgage Company, at Abilene, Texas, but did not at that time, or any time thereafter, notify or advise the defendants, Southern Mortgage Company, that said notes were to be held in Abilene, or of its agreement with Kelly Polk. Plaintiff also had executed and sent to the Southern Mortgage Company, a written guaranty, signed by R. O. Tackett, and a large number of others, guaranteeing the payment of the notes, this being one of the requirements of the Southern Mortgage Company in agreeing to make the loan.

"9th. Each of the twenty-two notes, aggregating $20,000.00, recited that it was secured by real estate situated in San Patricio County, and was a first lien, and upon their receipt by the Southern Mortgage Company in Abilene these notes were immediately

forwarded by that Company, with the application for loan, copy of Resolution, Clerk's receipt, list of guarantors and other papers, to the Mortgage and Securities Company in New Orleans, Louisiana, that being the usual manner in which such transactions were handled. * * *

"11th. The Taft Bank had knowledge of the execution and recording of the deeds of trust, and the execution of all other papers, and required that such action be taken, to fully commit the Southern Mortgage Company to the loan, before the Bank would agree to advance any money for the construction of the church, it being the agreement that the Bank would be repaid the money so advanced out of the proceeds of this loan.

"12th. Mrs. Ethelyn West, Mrs. Dorothy West Barham and Mrs. Margaret West Morris, original defendants in this suit, were sisters, and for a number of years prior to May, 1929, had done considerable business with the Mortgage and Securities Company in the purchase of notes and mortgages from that Company, and had an understanding with that Company, which was known to all of its employees, that they would not purchase construction loan notes, or notes, until the transaction had been completed.

"13th. A short time after these notes were received by the Mortgage and Securities Company in New Orleans, Louisiana, Mr. Frank Wood, a salesman for that Company, presented them, together with the application for loan, copy of instrument guaranteeing the notes, etc., to Mrs. West, who, acting for her sister in all of the transactions involving the purchase of these notes, leaving all of said papers with her, and shortly thereafter, Mrs. West advised him that she would purchase these notes when the transaction was completed, and they were ready for delivery.

"14th. Thereafter, on or about June 25th, 1929, Mr. Wood thinking the church had been completed, and that the notes were ready for delivery, so advised Mrs. West, and she then went to the office of the Mortgage and Securities Company, in New Orleans, Louisiana, and after inspecting the notes, purchased $15,000.00 of the series for Mrs. Barham, and $5000.00 for Mrs. Morris, paying therefor the full amount of principal and accrued interest, amounting to the sum of $20,412.23. The notes were delivered to her at that time, and were endorsed without recourse.

"15th. At the time of the purchase of these notes, on June 25th, neither Mrs. West, Mrs. Morris or Mrs. Barham had ever been in Taft, or knew any one there, and neither of them had any notice or knowledge of any agreement made by Kelly Polk to hold the notes in the Abilene office, and neither of them had any notice or knowledge of the fact that the Bank had agreed to furnish, or was furnishing, the money with which to construct the building, or that the money was not being paid by the Mortgage and Securities Company during the progress of the work as provided in the application, and did not have any notice or knowledge of the fact that the building had not been then completed, and relied upon the statements and assurances of the Mortgage and Securities Company's representative, with which Company they had been doing business for a number of years, to the effect that the building had been completed, and that the notes were then ready for delivery.

"16th. On August 8, 1929, Guy Hopkins was appointed Receiver of the Mortgage and Securities Company by the United States District Court in New Orleans, and at the time of such appointment the Mortgage and Securities Company had not forwarded the proceeds received from the sale of these notes to the Southern Mortgage Company, and plaintiff had not learned that the notes had not been held in the Abilene office, or that they had been forwarded to New Orleans and sold to Mrs. West, until at, on or about the time said Receiver was appointed, and upon ascertaining such fact, and that a Receiver had been appointed, plaintiff filed this suit to cancel the notes and first lien deed of trust. The $20,000.00 was never received by plaintiff.

"17th. The Taft Bank furnished approximately $20,000.00 in the construction of the church building, and the purchase of furniture, after the deeds of trust to the Southern Mortgage Company had been placed of record.

"Prior to August 24th, 1929, and after this suit had been filed, this money was furnished by a note being executed to the bank by the Building Committee for plaintiff, and the proceeds deposited to its credit in the Bank, and thereafter plaintiff paid bills, as the work progressed, for labor and material, by drawing checks on such account.

"After August 24th, 1929, the parties furnishing labor and material assigned their account to the Bank, after the same had been approved by plaintiff, and the accounts were then paid by the bank and notes were thereafter executed by plaintiff to Bank. * * *"

Upon those findings the trial judge filed his conclusions of law, as follows:

"1st. I conclude, as a matter of law, that plaintiff is not entitled to recover the relief prayed for, cancelling the $20,000.00 series of notes, and the deed of trust lien securing same.

"2nd. I conclude as a matter of law, that the $20,000.00 series of vendor lien notes were negotiable instruments, and that Mrs. Ethelyn West, Mrs. Morris and Mrs. Barham, were innocent purchasers for value for said notes, without notice of any defects or infirmities in same, and that Mrs. Barham, Mrs. Ethelyn West and Mrs. Joseph C. Morris, the present owners of said series of notes, are entitled to recover the full amount of principal, interest and attorneys fees due on all of said series of $20,000.00 notes, and to a foreclosure of their deed of trust lien on all of said property, real and personal, described in said deed of trust, as first and superior lien.

"3rd. I conclude, as a matter of law, that the Bank is entitled to recover judgment against the plaintiff for the amount advanced to plaintiff in the construction of the building, and the purchase of any furniture, and to have established and foreclosed a lien * * * second and inferior to the lien of Mrs. Ethelyn West et al."

Appellee West vigorously questions the form, regularity and sufficiency of the church's brief, insisting that it is in disregard of the statutes and rules for briefing, and, should not be considered. We overrule those objections. The church's brief is in the form most acceptable in this Court and conforms to the best practice of orderly and efficient presentation of appeals.

■ It is contended by the church, in a proposition not determined upon the former appeal, that inasmuch as it is a private, nontrading corporation, created for the support of public worship, its assumption of the obligation evidenced by the notes in suit, before it actually received the money consideration therefor, rendered the notes absolutely void and unenforceable. We overrule this contention, embraced in the church's propositions 1, 2 and 3. Such corporations are creatures of the statutes, as are other private corporations, and, like the latter, are empowered to mortgage real property, in furtherance of their corporate purposes (Arts. 1396, 1409, R.S. 1925), and we know of no restriction upon the power of a religious corporation, not common to corporations created for other purposes, in the matter of creating indebtedness in furtherance of its lawful purposes. The church invokes the provision of the statute prohibiting private corporations from creating "any indebtedness whatever except for money paid, labor done * * * or property actually received * * *" (Art. 1348, R.S.1925), and asserts that as the Southern Mortgage Company, payee, nor any one for it, ever paid over the amount of the promised loan, the notes evidencing that promised loan were rendered void and wholly unenforceable. It is undoubtedly true that the church could invoke the statutory prohibition, as it could the defense of failure of consideration, against the original payee, with whom it dealt in the matter. But when it executed the notes and placed them afloat as negotiable instruments, it is obvious that those defenses were not available to it to defeat the obligations in the hands of innocent purchasers. The title of the original holder was bad for other reasons than those mentioned above, as held by the Supreme Court in the case, but as Mrs. West acquired the obligations without notice of any of those infirmities in the title of her predecessors, the same constitute no defense to her suit.

■ In its fifth proposition the church contends that the president of its Board of Trustees was authorized and directed by resolution of the Board to instruct the trustee named in the deed of trust involved to deliver the notes to Southern Mortgage Company only when the church had received the proceeds of the loan and executed receipt and acquittance therefor. We think the contention is defeated by the trial court's seventh finding of fact, already set out herein, and that the record supports that finding. We overrule the proposition.

■ The church contends that the purported assignment of the notes involved by Southern Mortgage Company, payee, to its parent corporation, Mortgage and Securities Company, was not shown to have been executed by responsible officers of the

assignor, or by officers thereunto duly authorized, as found by the trial judge. We overrule the contention, propounded in the church's fifteenth proposition, on authority of Arts. 573, 5932, § 16, R.S.1925; 6 Tex. Jur. p. 931, § 262; Forster v. Enid, O. & W. R. Co., Tex.Civ.App., 176 S.W. 788, and authorities cited.

■ The record shows that a large part of the money used in the construction and equipment of the church property was actually furnished by the Taft Bank, which sought in this suit to recover the amount from the church, and to establish mechanics', materialmen's and laborers' liens upon the church property to secure its claim, and prayed that such lien be decreed superior to the deed of trust lien awarded Mrs. West. The trial court rendered judgment for the bank as prayed for, except that its lien was adjudged inferior to the deed of trust lien. The bank has appealed, earnestly contending for the full relief prayed, for. The bank has presented its contentions under its first three propositions. In our opinion, the contentions therein presented were disposed of either directly or by implication in the former decision of the case by the Supreme Court. 123 Tex. 388, 71 S. W.2d 1090. The facts show, as found by the Supreme Court in the former decision, and, in the eleventh finding, by the court below in the last trial, that the bank furnished this money to the church with full knowledge of the prior deed of trust lien upon the church property, which was executed two months before the construction of the church began. In truth, the bank declined to advance any money on the project until the Southern Mortgage Company was definitely committed to making the promised loan to the church. After the church had expended $12,000 of its own money on hand in payment of labor and materials used in the construction, it became necessary to begin borrowing, and it was then the bank began its advancements, with the express understanding that it would be repaid out of the loan from the Mortgage Company. The bank advanced the money by the process, as found by the Commission of Appeals in the first opinion, of placing the same, in amounts of $5,000, to the credit and upon the notes of the church, which would pay it out by its checks to laborers, mechanics and materialmen. When it developed, after two months of this procedure, that the Mortgage Company had sold the church notes to Mrs. West and pocketed the proceeds and the church was without recourse, the Bank continued, nevertheless, to advance funds for the construction, and the church, in the meantime, filed this suit to cancel its notes to the Mortgage Company. The procedure under which the Bank advanced said funds was changed with this development. Instead of placing the money directly to the credit of the church, and taking its notes therefor at the time, as before, and instead of the church paying the construction bills directly upon its checks on the Bank, as before, the church would approve such bills as they accrued, the Bank would pay the holders of the bills and take assignments of their claims, and the church then would execute its notes to the Bank to secure the latter in the transaction. We are of the opinion, under the facts stated, in view of the opinion of the Commission of Appeals on the former appeal, that the trial court did not err in rejecting the bank's claim of a lien superior to the prior deed of trust lien.

■ The case presents a harsh and regrettable, but none the less unavoidable, application of the doctrine, expressed by the Supreme Court of the United States in Carpenter v. Longan, 16 Wall. 271, 21 L.Ed. 313, and quoted by Judge Smedley in this case, that "If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who 'puts trust and confidence in the deceiver should be a loser rather than a stranger.'" 71 S.W. 2d 1100.

The judgment is affirmed.