## NEWTON v. RECONSTRUCTION FINANCE CORPORATION.

No. 4277.

Court of Civil Appeals of Texas. El Paso.
April 22, 1943.

Rehearing Denied May 13, 1943.

Bond, Crofts & Bond, of Terrell, for appellant.

Sawnie R. Aldredge, of Dallas, for appellee.

McGILL, Special Commissioner.

This is an appeal from a judgment of the 95th Judicial District Court exercising jurisdiction in Dallas County.

Appellee, Reconstruction Finance Corporation, sought, as a holder in due course, to recover from appellant, J. C. Newton, as maker, a balance of principal, interest and attorney's fees due on a promissory note. The note was for the principal sum of $1,000, was dated March 10, 1939, due October 1, 1939, was payable to the order of the Mercantile National Bank at Dallas, was signed by appellant, and endorsed by the Mercantile National Bank by its Vice President "without recourse"; it also bore the endorsement of Pure Food Products, Inc., a corporation, by W. D. Walker, its President. Trial was to a jury, but at the conclusion of the evidence the court peremptorily instructed a verdict for appellee for $1,232.85, the balance of principal, interest and attorney's fees due on the note, for which judgment was accordingly rendered.

We shall hereafter refer to appellee as "plaintiff," to appellant as "defendant," to the Mercantile National Bank at Dallas as the "Bank," to Pure Food Products, Inc., as the "Products Co.," and to W. D. Walker as "Walker."

Defendant made the Bank, the Products Co. and Walker third parties defendants to the suit, and sought to require plaintiff to make them parties defendants, and to demand judgment against them in the first instance, which plaintiff refused to do. In the alternative, defendant sought to recover against the third parties defendants the amount of any judgment plaintiff might recover against him. On motion of plaintiff, and over the vigorous protest of defendant, the court granted plaintiff a separate trial as against defendant, and later overruled defendant's motion to set aside the order of severance and to consolidate the trial with that between defendant and the third parties defendants.

Defendant has presented one hundred and forty-five points on which he predicates his appeal. In four (4th and 143d to 145th, inclusive) he complains of the peremptory instruction and rendition of

judgment thereon. In four (1st to 3d, inclusive, and 5th) he complains of the orders granting a separate trial and refusing to consolidate. In twenty-five (6th to 30th, inclusive) he challenges the action of the court in sustaining exceptions to and striking out portions of his pleading. One hundred and eleven points (31st to 141st, inclusive) relate to the admission and exclusion of evidence, and one point (142d) relates to the court's refusal to submit defendant's requested issue on "bad faith."

■ Defendant unquestionably tendered pleading and proof sufficient to show a perfect defense to any liability on the note as against any one other than a holder in due course. In substance this was: In 1939 defendant was a farmer; he had raised a cucumber crop that year; the Products Co., of which Walker was the President, was engaged in the business of packing and salting down cucumbers and preparing them for market. Defendant desired the Products Co. to handle his crop, and needed $1,000 to enable him to gather it. He signed the note in question and delivered it to Walker, whom he had previously known and done business with, with the understanding that Walker should use it to procure a $1,000 loan for him from the Bank. Walker represented to him that he (Walker) had influence with the Bank and could obtain such a loan for defendant. The Bank, however, refused to make the loan and Walker notified defendant of such refusal, but failed to return the note to him as he requested, always putting him off, and telling him that the note was in his (Walker's) lock box at the Bank, and that he would get it. In truth Walker had procured the Bank's qualified endorsement "without recourse," and had placed the endorsement of the Products Co. by him as its president upon the note, all without the knowledge or consent of defendant. He then either pledged the note with the Bank as collateral to protect the Bank on his overdraft, or the overdraft of the Products Co. with it, or pledged it with plaintiff as collateral to secure an increase from $15,000 to $25,000 of a loan of the Products Co., which it had with plaintiff. The evidence was sufficient to support either theory, i. e., that Walker pledged the note with the Bank to protect his overdraft or the overdraft of the Products Co., and later instructed the Bank to deliver it to plaintiff as collateral on an application of the Products Co. for increase of its loan with plaintiff, and that plaintiff advanced the money obtained from the increased loan to the Bank; or that Walker obtained the note from the Bank and himself placed it as collateral with plaintiff; that plaintiff used the increased loan to pay off the loan of $15,000 and disbursed the balance to pay debts of the Products Co.

Defendant never received any consideration for the note and was unwilling that it should be negotiated to any one except the Bank, and was willing that it be negotiated with the Bank only on condition that the proposed loan of $1,000 should be made by the Bank to him.

The question is thus presented as to whether or not plaintiff occupies the status of a holder in due course under our Negotiable Instruments Act (Title 98, Arts. 5932 to 5948, Vernon's Annotated Civil Statutes). Under this statute such defenses are not available against a holder in due course. Art. 5935, Sec. 57. A holder in due course is defined in Art. 5935, Sec. 52, as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

■■ We think there can be no question but that the note in question was complete and regular upon its face, within the meaning of this section. The cases of Rabb v. Seidel et al., Tex.Com.App., 250 S.W. 420; Foster v. Security Bank & Trust Co., Tex.Com.App., 288 S.W. 438, and National Cattle Loan Co. v. Armstrong, Tex.Civ.App., 8 S.W.2d 767, writ refused, relied on by defendant to support his theory that no contract or liability could arise on the note until there was a valid delivery to the payee, do not sustain this proposition when the instrument is in the hands of a holder in due course. As to him, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. Art.

5932, Sec. 16. There is no question but that plaintiff became the holder of the note before it was overdue, and that it had no actual notice of any infirmity in it or defect in the title of the person negotiating it; nor can there be any serious question that plaintiff took the note for value, since the evidence showed that after exhausting all other collateral plaintiff held an unsatisfied judgment for some $16,000 against the Products Co. Art. 5933, Sec. 27.

The serious question, which we think is decisive of this appeal, is whether the pleading—including that which was stricken—and the evidence—including that which was excluded—raised any issue as to whether plaintiff took the note in good faith, or under circumstances such as amounted to bad faith within the meaning of Art. 5935, Sec. 56. If such issue was raised by any evidence, it became a question of fact for the jury. Kaufman Oil Mill v. North Texas Nat. Bank, Tex.Civ. App., 16 S.W.2d 143, writ refused; Walker v. Commercial Credit Co., Tex.Civ.App., 107 S.W.2d 688, writ dismissed. And a peremptory instruction was erroneous unless all the evidence was insufficient to support a finding of bad faith. West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090, at page 1097.

It is true that bad faith can be established by circumstantial evidence (Walker v. Commercial Credit Co., supra; Landon v. Halcomb, Tex.Civ.App., 184 S. W. 1098), and that such facts and circumstances as would be permissible in an ordinary case to show that the purchaser of a negotiable instrument had knowledge of facts that should have put a reasonably prudent man upon inquiry, are admissible in evidence as tending to show actual knowledge of a defect in the title to the instrument, or that the purchaser in taking the instrument with knowledge of such facts acted in bad faith. Kaufman Oil Mill v. North Texas Nat. Bank, supra. But this does not mean that knowledge of suspicious circumstances of whatever character constitutes evidence from which alone bad faith may be inferred. Evidence may be admissible as tending to prove a fact to be established without being sufficient of itself to support a finding of the fact. West v. First Baptist Church of Taft, supra, 123 Tex. 388, 71 S.W.2d at page 1097. What circumstances are sufficiently suspicious to constitute bad faith on the part of a purchaser of a negotiable instrument are generally held to be a question of fact. But the rule is well settled in this State that "to serve as evidence to support a finding of bad faith, the unheeded suspicious circumstances must be of a substantial character and so strong that bad faith rather than merely negligence can reasonably be inferred from them". American Surety Co. of N. Y. v. Fenner, 133 Tex. 37, 125 S.W.2d 258, at page 260; West v. First Baptist Church of Taft, supra; Quanah, A. & P. R. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W. 2d 701, 106 A.L.R. 821.

Furthermore, when fraud is shown in the inception of the instrument, in order to avoid such defense, the holder must prove that he obtained the paper before maturity in good faith and for a valuable consideration. But "when he has shown that he has paid value in the usual course of business and the circumstances attending the transfer cast no suspicion upon the fairness of his intent, he need go no further, and it then devolves upon the defendant to show notice to him in order to defeat a recovery." Prouty v. Musquiz, 94 Tex. 87, 58 S.W. 721, 722.

This was the rule at common law, and, as held by this court, it has not been changed by the Negotiable Instruments Act. Shaw v. San Jacinto Realty Co., Tex.Civ.App., 16 S.W.2d 341, writ refused.

In the light of these principles, let us examine the pleadings and evidence to ascertain whether or not the issue of bad faith was improperly withdrawn from the jury.

Although defendant pleaded actual notice, there was no evidence that plaintiff had any actual notice of any infirmity in the note or any defenses as between defendant and the third parties defendants. Defendant made general allegations of bad faith and also alleged: "that from prior transactions and business dealings between plaintiff and W. D. Walker and The Pure Food Products, Inc., as well as from the reading of the note, character of endorsements thereon, the plaintiff carelessly and negligently failed to inquire and investigate all or any of the facts in connection with the making of the note, its delivery, acceptance, or non-acceptance."

The allegations of facts on which defendant relies to have required a reasonably prudent business man to have made an investigaton whereby defendant's defenses

to the note would have been ascertained and to constitute bad faith are replead in his third supplemental answer to plaintiff's third supplemental petition. They are in substance that plaintiff's managing officers were shrewd business men; that plaintiff's principal business is lending money, and its officers were well versed in the usages and customs of lending money; were well acquainted with the managing officers of the Bank; knew the Bank's principal business was lending money and taking notes as security therefor; knew the note was payable to the order of the Bank and bore its qualified endorsement; knew the Products Co. was not engaged in lending money, but that the purpose of its incorporation was pickling cucumbers; knew that its act in endorsing the note was not connected with the purposes of its incorporation; knew that it was unusual for a bank to take a note payable to its order and then immediately place its qualified endorsement thereon and deliver it to a stranger; knew that the Products Co. was a borrower and not lender; knew it was indebted to plaintiff for many thousands of dollars incurred in the previous year which it was unable to pay; knew it was insolvent and not financially able to have purchased the note. That plaintiff required Walker and the Products Co. to execute a separate written assignment to the note; that plaintiff's office was within a few blocks of the Bank, both had telephones, yet plaintiff intentionally disregarded and refused to learn the facts under which the note was given.

Defendant also contends that bad faith was shown by a letter which was introduced in evidence by plaintiff. The evidence is not clear whether Walker volunteered to produce this letter or whether plaintiff's examiners requested him to do so. It is dated August 28, 1939, and was delivered to plaintiff on that date. It was as follows:

"Aug. 28th, 1939.

"R. F. C. Co.
"Gentlemen I havnt had a settlement on cucumbers but it is satisfactory for Mr. Walker to pay the 500.00 note and will pay the 1000.00 note when comes due.
"Yours very truly
"J. C. Newton."

Plaintiff proved by its local assistant manager, who testified from the records in its office, that the application of Walker for the Products Co. to increase its loan from $15,000 to $25,000 was made at its office in Dallas on May 15, 1939, and was investigated by its examiners and finally approved and the money disbursed on August 31, 1939.

In our opinion the letter referred to does not aid defendant in establishing the ultimate issue of bad faith. If the examiner had reasons to be suspicious which impelled him to request the letter, the fact that the letter was produced probably dispelled such suspicions. There is no evidence the examiner had any knowledge that defendant had not signed the letter or knowledge of any facts which would have led him to believe it was not authentic.

 We have concluded that the proffered pleading and evidence were insufficient to support an issue of bad faith, although probably sufficient to have raised such issue. Therefore the court did not err in giving the peremptory instruction. This view renders unnecessary a discussion of all other points.

The judgment is affirmed.

This opinion directed to be written and is adopted by the court.

WALTHALL, J., not participating.